United States Court of Appeals
For the Eighth Circuit

_____

No. 14-1164
_____

Sarah McIvor

*Plaintiff - Appellant*

v.

Credit Control Services, Inc., doing business as Credit Collection Services

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis
_____

Submitted: October 6, 2014
Filed: December 4, 2014
_____

Before MURPHY, SMITH, and GRUENDER, Circuit Judges.
_____

MURPHY, Circuit Judge.

Sarah McIvor filed a complaint in the District of Minnesota alleging that Credit Control Services (Credit Control) violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* McIvor alleged that she disputed a debt to Credit Control by making an online report to consumer reporting agency TransUnion, that TransUnion contacted Credit Control to investigate the dispute, and that Credit Control failed to report the debt as disputed when it responded to TransUnion's

inquiry. The district court[1] granted judgment on the pleadings to Credit Control. McIvor appeals. We affirm.

According to her amended complaint, McIvor used TransUnion's online system on April 2, 2013 to dispute a $242 debt alleged against her by Credit Control. McIvor reported to TransUnion, "Creditor agreed to remove this account from my file. This account is settled." TransUnion reported McIvor's dispute to Credit Control "as part of its reinvestigation required by the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*" McIvor's complaint alleged that Credit Control then "provided updated credit information regarding the Debt to [TransUnion] on April 20, 2013 without stating that [she] had disputed it," and TransUnion "in turn verified the Debt to [McIvor] on April 21, 2013." McIvor attached exhibits to the complaint showing screenshots of the investigation request she submitted to TransUnion on April 2, her updated credit file dated April 20, and the resolution summary TransUnion provided her on April 21. She claimed that Credit Control's violation "makes it more difficult for Consumer to seek and receive funding."

The complaint alleges that Credit Control violated 15 U.S.C. § 1692e(8), which provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

> * * * * *

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

According to the complaint, Credit Control violated this statute "by communicating credit information regarding the Debt to [TransUnion] without indicating that [McIvor] had disputed it, thereby conveying false credit information."

After Credit Control answered the complaint, McIvor moved for summary judgment and Credit Control responded with a motion for judgment on the pleadings. After a hearing on these motions, the district court granted judgment on the pleadings to Credit Control. The court determined that the statute required McIvor to allege that Credit Control's communication with TransUnion was both "false, deceptive, or misleading" and "in connection with the collection of any debt." Because the complaint did not plausibly allege either requirement, McIvor did not state a claim for a violation of § 1692e. The court stated that "the communication at issue in no way exemplifies the abusive behavior or false or misleading practices that Congress had in mind when it enacted the FDCPA," and it concluded that judgment on the pleadings was warranted. McIvor appeals.

We review the grant of judgment on the pleadings de novo, viewing the facts in McIvor's complaint as true and granting all reasonable inferences in her favor. Poehl v. Countrywide Home Loans, Inc., 528 F.3d 1093, 1096 (8th Cir. 2008). We apply "the same standard as when we review the grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)," Packard v. Darveau, 759 F.3d 897, 900 (8th Cir. 2014) (quotation omitted), and the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation omitted).

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors [and] to insure that those debt collectors who refrain from using abusive

-3-

debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e). Congress sought to prevent abusive practices including "threats of violence; . . . the publishing of 'shame lists'; harassing or anonymous telephone calls; impersonating a government official or attorney; . . . obtaining information under false pretenses; [and] collecting more than is legally owing." S. Rep. No. 95-382, reprinted in 1977 U.S.C.C.A.N. 1695, 1698 (1977). Individual consumers like McIvor may sue under the act and may recover actual damages, statutory damages up to $1,000, attorney fees, and costs. 15 U.S.C. § 1692k(a).

McIvor claimed that Credit Control violated the prohibition in 15 U.S.C. § 1692e against using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." The district court read the statute to require a complaint to allege that a debt collector's action was both "false, deceptive, or misleading" and "in connection with the collection of any debt." We agree, and McIvor does not challenge this determination on appeal. She instead argues that the district court erred in concluding her complaint insufficiently alleged that Credit Control's statement to TransUnion met these requirements.

McIvor argues that Credit Control's verification of the debt was "false, deceptive, or misleading" because Credit Control was told the debt was disputed but did not relay that information to TransUnion. In other words, Credit Control "fail[ed] to communicate that a disputed debt was disputed." 15 U.S.C. § 1692e(8). When evaluating whether the statement of a debt collector is "false, deceptive, or misleading," we consider the effect it would have on the listener or recipient. See Hemmingsen v. Messerli & Kramer, P.A., 674 F.3d 814, 819 (8th Cir. 2012); Peters v. Gen. Serv. Bureau, Inc., 277 F.3d 1051, 1055 (8th Cir. 2002). In Peters, we viewed a letter "through the eyes of an unsophisticated consumer" to evaluate whether it was misleading when the consumer was the intended recipient of the letter. Peters, 277 F.3d at 1055. Even a literally false statement does not violate § 1692e if it would not mislead the recipient. Id. at 1056.

-4-

Here, the recipient of Credit Control's statement was TransUnion, not a consumer. While liability under § 1692e is not confined to statements by collectors to consumers, the challenged statement must have the potential to "misl[ea]d, deceive[], or otherwise dupe[]" someone in order to be actionable. Hemmingsen, 674 F.3d at 818-19. The facts alleged in the complaint do not support a claim that TransUnion could have been misled, deceived, or duped when Credit Control did not explicitly state that the debt was disputed. TransUnion was already aware that the debt was disputed because "the sole reason for Defendant to even communicate with the credit bureau[] was in response to Plaintiff's dispute of the debts through the credit bureau's own dispute notification system." Neeley v. Express Recovery Servs., 2012 WL 1641198 at *2 (D. Utah 2012). Under these circumstances, the district court correctly concluded McIvor did not plausibly allege that Credit Control's communication was "false, deceptive, or misleading."

McIvor argues on appeal that the challenged communication was deceptive because Credit Control's omission affected the way TransUnion calculated her credit score. The complaint alleged nothing about TransUnion's credit scoring model, however. McIvor urges us to take judicial notice of the facts underlying other cases discussing how TransUnion calculates credit scores, but judicial notice of facts outside of the record is not appropriate "unless the facts are matters of common knowledge or are capable of certain verification." Am. Prairie Const. Co.  v. Hoich, 560 F.3d 780, 798 (8th Cir. 2009) (quotation omitted). Judicial notice of another court's opinion takes notice of "the existence of the opinion, which is not subject to reasonable dispute over its authenticity," but not of the facts summarized in the opinion. Lee v. City of Los Angeles, 250 F.3d 668, 690 (9th Cir. 2001) (quotation omitted). Accordingly, we decline to take judicial notice of the facts underlying the cases McIvor cites. Her complaint thus contains insufficient factual basis to support McIvor's argument that Credit Control's action was false, deceptive, or misleading because of how TransUnion's scoring model works.

McIvor also appeals the district court determination that the complaint insufficiently alleged that Credit Control's communication with TransUnion was "in connection with the collection of any debt." This circuit has not yet considered a case that required us to define the phrase "in connection with the collection of any debt." Other circuits have determined that this phrase is intended to encompass more than simply a debt collector's demands for payment made to the consumer. Simon v. FIA Card Servs., N.A., 732 F.3d 259, 266 (3d Cir. 2013); Grden v. Leikin Ingber & Winters PC, 643 F.3d 169, 173 (6th Cir. 2011); Gburek v. Litton Loan Servicing, 614 F.3d 380, 382 (7th Cir. 2010). We now follow these circuits in concluding that "for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." Grden, 643 F.3d at 173; see Simon, 732 F.3d at 266-67; Gburek, 614 F.3d at 385.

McIvor contends that Credit Control "had no purpose here other than collection." She argues that Credit Control's communication to TransUnion was in connection with debt collection because entities like Credit Control use credit reporting as a way to induce consumers to pay their debts. She cites a letter from the Federal Trade Commission which states, "[D]ebt collectors use the reporting mechanism as a tool to persuade consumers to pay, just like dunning letters and telephone calls." Federal Trade Commission, Staff Opinion Letter, 1997 WL 33791232 at *1 (December 23, 1997).

Certainly, communication between a debt collector and a consumer reporting agency may at times be in connection with debt collection. We have previously noted that § 1692e(8) prohibits a debt collector who has received notice of a dispute from a consumer and who "*elects* to communicate 'credit information' about a consumer" to a reporting agency from omitting its knowledge of the dispute. Wilhelm v. Credico, Inc., 519 F.3d 416, 418 (8th Cir. 2008) (emphasis in original). The Federal Trade Commission letter McIvor cites similarly concludes that a debt collector engages in collection activity when it chooses to report a debt it knows to be disputed. Staff

Opinion Letter, 1997 WL 33791232 at *1. McIvor makes a much broader argument, however. She contends that *any* communication about a debt from a debt collector to a consumer reporting agency is *always* intended to facilitate collection. We decline to draw such a sweeping conclusion, especially when the allegations in the complaint itself undercut McIvor's argument. McIvor alleged that the communication between TransUnion and Credit Control, prompted by her dispute report, was "part of [the] reinvestigation required by the Fair Credit Reporting Act" (FCRA).

Congress enacted the FCRA to address a "need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4). It places responsibilities on both consumer reporting agencies and furnishers of information, including debt collectors. E.g. 15 U.S.C. §§ 1681i, 1681s-2. When a consumer disputes a debt directly with a reporting agency, as McIvor did, the agency must within 30 days "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file" if it is "found to be inaccurate, incomplete, or cannot be verified." § 1681i(a)(1)(A), (5)(A). When a furnisher of information like Credit Control is contacted as part of this reinvestigation process, it is obligated to "conduct an investigation with respect to the disputed information" and report the results to the consumer reporting agency. § 1681s-2(b). Individual consumers may sue for willful or negligent failure to comply with the investigation requirements outlined in these sections, but McIvor did not bring such a claim against Credit Control. §§ 1681n, 1681o.

As supported by these statutory requirements and alleged in the complaint, Credit Control communicated with TransUnion with the purpose of complying with the FCRA, not as an elective report of credit information. The distinction between voluntary and required communication with consumer reporting agencies is significant. In Edeh v. Midland Credit Management, Inc., 748 F. Supp. 2d 1030 (D.

Minn. 2010), aff'd, 413 F. App'x 925 (8th Cir. 2011) (per curiam), the district court distinguished between voluntary reporting of debts and FCRA required verification. There, the consumer claimed that the collector, Midland, violated § 1692g of the FDCPA because it did not cease collection activities after he disputed the debt in writing. 748 F. Supp. 2d at 1033-34. Midland had reported the debt to a consumer reporting agency and also responded to inquiries from reporting agencies by verifying the debt. Id. The court "distinguish[ed] Midland's *reporting* the debt to the CRAs on its own initiative from Midland's *verifying* the debt after receiving notification from the CRAs that Edeh had disputed the debt," granting summary judgment to Edeh on the claim that reporting violated § 1692g and to Midland on the claim that verifying violated § 1692g. Id. at 1035-36 (emphasis in original). The difference between these two actions was that Midland did not have to report the debt, but it was required by the FCRA to verify the debt. Id.

Although Edeh concerned a different section of the FDCPA, the distinction it drew is persuasive. Here, McIvor does not allege that Credit Control failed to communicate that the debt was disputed during a voluntary report to TransUnion. Neither does the complaint allege facts showing any collection related motivation for the communication at issue. The only "animating purpose" for Credit Control's communication that is plausibly alleged in the complaint is compliance with the reinvestigation procedures required by the FCRA, and actions related to these investigation requirements are brought under the FCRA rather than the FDCPA.

We conclude that McIvor neither plausibly alleged that the communication at issue was "false, deceptive, or misleading" nor that it was "in connection with the collection of any debt." The complaint therefore fails to state a claim for relief under § 1692e. The judgment of the district court is affirmed.

_____