NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0091n.06

No. 14-5419

## UNITED STATES COURTS OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| INGE GOODSON, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | ***Jan 28, 2015*** |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| BANK OF AMERICA, N.A., | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE:     BATCHELDER and ROGERS, Circuit Judges; and BECKWITH, Senior District Judge.[*]

ROGERS, Circuit Judge.   Plaintiff Inge Goodson appeals the district court's grant of defendant Bank of America, N.A.'s (BANA's) motion for summary judgment on her Fair Debt Collection Practices Act (FDCPA) claim.   After a confusing foreclosure process, Goodson filed suit in district court alleging that four letters sent by or on behalf of BANA included "false, deceptive or misleading" representations in violation of the FDCPA.   After the close of discovery, the district court granted BANA's motion for summary judgment, finding that (1) two of Goodson's letters were time-barred; and (2) because the remaining two letters did not constitute communications made in connection with the collection of a debt, they did not violate the FDCPA.   Plaintiff appeals.   Because neither the discovery rule nor equitable tolling applies to

---

[*] The Honorable Sandra S. Beckwith, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

the first two letters, and the remaining two communications had not been made to induce Goodson to pay her defaulted mortgage, the district court correctly granted BANA's motion for summary judgment.

In 2008, Goodson refinanced her home in Lyles, Tennessee with a residential mortgage loan in the amount of $235,226.00 from Taylor, Bean & Whitaker ("TBW"). TBW included Goodson's loan in a mortgage-backed security issued by the Government National Mortgage Association ("Ginnie Mae") in April 2008. According to Goodson, the Federal Reserve Bank of New York held the mortgage-backed security, and was the entity to whom Goodson owed her debt through July 2010.

In March 2009, on the advice of TBW, Goodson defaulted on her mortgage in the hopes of qualifying for a loan modification. While Goodson's loan was still in default, however, Ginnie Mae defaulted TBW and terminated any rights TBW had to Goodson's note. Consequently, on August 23, 2009, BAC Home Loans Servicing, LP (which has since merged with BANA), sent Goodson a letter to inform her that BAC was now the servicer of her loan. The letter further indicated that Goodson owed $240,985.49 to Ginnie Mae, the creditor, and included an FDCPA standard disclaimer.[1] Goodson claims that this notice violated the FDCPA by incorrectly identifying Ginnie Mae as the creditor when, in actuality, the Federal Bank of New York (the owner of the mortgage-backed security pool), owned her loan.

---

[1] The disclaimer stated:

> Under the Fair Debt Collections Practices Act, as well as various state-specific acts, BAC Home Loans is considered a debt collector. BAC Home Loans must provide certain information to you in order to make sure you are informed when a communication is related to a debt. The "warning language", such as the required information provided at the bottom of this letter, provides the specific verbiage we must include when discussing the collection of a debt. Although your loan payment may not yet be due, we have provided this information in order to comply under the appropriate laws governing debt collection.

On May 6, 2010, the law firm of Shapiro & Kirsch, LLP ("Shapiro") sent Goodson a letter to inform her that it had been "retained [by BANA] to initiate foreclosure proceedings" on her property. The letter identified BAC as the creditor, and advised Goodson that she currently owed $253,880.31 on her mortgage. Shapiro sent a follow-up notice in July 2010 to inform Goodson that a non-judicial foreclosure of her home would take place on August 3, 2010. Goodson later learned during discovery that at the time of Shapiro's correspondence, BAC (or later BANA) did not own her loan or note. Thus, Goodson contends that the May 6, 2010 letter was false and misleading in violation of the FDCPA because it misidentified the creditor.

BAC/BANA then allegedly bought Goodson's home at the foreclosure sale for $260,643.41 cash, and Shapiro recorded deeds to that effect. During discovery, Goodson later learned that BANA had obtained the property through a "dead credit bid" (i.e., a credit bid instead of cash because the cash would be returned to BANA anyway).[2] In state court proceedings initiated by Shapiro to eject Goodson from the property, Shapiro had filed an affidavit and substitute trustee deed that indicated that BANA had bought the property for cash. However, in later testimony, Shapiro explained that the property had been sold through a "dead credit bid." BANA similarly maintained that it had purchased Goodson's property at foreclosure, though it did not know if it had, in fact, paid anything of value for Goodson's property.[3] For the first time in her "Opposition to Defendant's Motion for Summary Judgment,"

---

[2] "The credit bid rule provides that when a lender bids at a foreclosure sale, it is not required to pay cash, but rather is permitted to make a credit bid because any cash tendered [] would be returned to it." *Grayer v. JPMorgan Chase Bank, N.A.*, No. 12-11125, 2013 WL 4414867, at *4 n.4 (E.D. Mich. Aug. 15, 2013) (Michigan law) (internal quotation marks omitted). Tennessee law recognizes that if, at the foreclosure sale, the lender or mortgagee bids the full amount of the outstanding debt and accepts the property as full payment of the debt, the mortgage will be extinguished. *First Inv. Co. v. Allstate Ins. Co.*, 917 S.W.2d 229, 231 (Tenn. Ct. App. 1994); *accord Penn Mut. Life Ins. Co. v. Cleveland Mall Assocs.*, 916 F. Supp. 715, 717 (E.D. Tenn. 1996).

[3] During oral argument, the attorney for BANA explained that BANA's representative during the deposition had simply not known the specifics of the foreclosure transaction. BANA's representative had, however, repeatedly stated that Shapiro, the foreclosure firm that had handled the foreclosure of Goodson's home, would be able to answer such questions.

Goodson alleged that BANA violated the FDCPA when it falsely represented that it had purchased her property for cash, as opposed to through a dead credit bid.

Despite Shapiro's testimony that, following the foreclosure sale, Goodson's loan should have been reflected as paid in full, Goodson continued to receive notices that indicated a remaining balance. On July 8, 2011, BANA sent Goodson a letter to inform her that, "[e]ffective July 1, 2011, the servicing of home loans by our subsidiary—BAC Home Loans Servicing, LP, transfers to its parent company—Bank of America, N.A." The letter included a standard FDCPA disclaimer, notifying Goodson that "Bank of America, N.A. is required by law to inform you that this communication is from a debt collector attempting to collect a debt." On the second page, in a section tracking the notice requirements of 15 U.S.C. § 1692g, BANA informed Goodson that as of June 30, 2011, she owed $278,681.40 to the creditor, GNMA-MSS-TBW 9262 AA. BANA sent Goodson a follow-up letter on July 13, 2011, which stated: "Between late June and early July we mailed you a 'Fair Debt Collections Practices Act and State Law Notice' in connection with your prior home loan account noted above. We are writing to let you know that this Notice was sent to you in error and ask that you disregard it." Goodson alleges that the July 8, 2011 letter violated the FDCPA because it (1) misidentified the creditor as a different entity than Ginnie Mae; and (2) indicated that she owed in excess of her loan.

Upon receipt of the July 8, 2011 letter, Goodson sent an inquiry to BANA disputing the debt and requesting verification. On October 7, 2011, Blank Rome LLP responded to Goodson's inquiry on behalf of BANA. In the letter's first paragraph, Blank Rome LLP explained, "This firm represents Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP ("Bank of America") for the *sole purpose of responding to your correspondence* dated July 8, 2011." Blank Rome LLP also provided her with a payment history. The letter indicated that

Ginnie Mae held Goodson's note, and stated that the payoff statement would "show all amounts necessary to pay off" her previous loan. The payment history, however, did not reflect any credit made to Goodson's account following BANA's purchase of her property at foreclosure. Goodson contends that this letter was false and misleading because it indicated that she owed in excess of her loan.

Finally, in January 2013, BANA sent another letter notifying Goodson that she owed $310,784.22.[4] The letter also advised Goodson of the requirements she had to follow to pay off the loan, and informed her of prepayment considerations. Despite the fact that her property had been foreclosed in 2010, Goodson remained, and as of December 1, 2014, was still living on the property.

Goodson filed suit in district court on July 6, 2012, alleging that BANA violated 15 U.S.C. §§ 1692e and 1692g of the FDCPA, by sending her "an FDCPA communication in connection with the collection of a debt which contained at least one false, deceptive or misleading representation or means when, among other things, it stated that she owed in excess of the amount of the loan and that, according to Bank of America's agent, misidentified the creditor to whom the debt was owed." BANA filed a Motion to Dismiss on August 9, 2012, which was subsequently denied by the district court on September 26, 2013.

After the close of discovery in April 2013, BANA filed a Motion for Summary Judgment, arguing that (1) the claims arising from the August 23, 2009 and May 6, 2010 letters were time-barred; and (2) because the remaining two letters were "merely informational communications, [and] not debt collection activities," they were not subject to the FDCPA. Goodson filed a motion in opposition, asserting that the discovery rule, equitable tolling and the continuing-

---

[4] Goodson mentions this letter in her brief. However, she does not appear to argue that it should serve as the basis for a separate FDCPA claim, nor did she mention it in her complaint.

violation doctrine permitted inclusion of the claims against BANA that would otherwise be time-barred, and that a reasonable jury could conclude that the communications were made in connection with debt collection activities.

The district court granted BANA's Motion for Summary Judgment on March 11, 2014. After finding that Goodson's claims based on the August 23, 2009 and May 6, 2010 letters were time-barred, the court rejected Goodson's arguments regarding the limitations period based upon the discovery rule, equitable tolling, and the continuing-violation doctrine. The court reasoned that the discovery rule was inapplicable because Goodson alleged only violations of the FDCPA, without asserting that she had been injured by fraud. Equitable tolling was similarly inapplicable because "[t]he basis of her FDCPA claim [wa]s that the August 23, 2009 and May 6, 2010 letters were misleading, not that BANA [may] have made misrepresentations to the state court in the foreclosure proceedings," and the alleged conduct did not prevent her from discovering her FDCPA cause of action. The court rejected the continuing-violation doctrine because the court determined that the sending of each letter was a discrete act that, for statute of limitations purposes, "should be analyzed on an individual basis." Lastly, the court held that the remaining letters were not communications made in connection with debt collection activity, as required by the FDCPA, because they were intended to merely inform, rather than "induce payment."

This appeal followed. Each of the three issues raised by Goodson on appeal is without merit. First, the district court was not required to consider the false and misleading representations made by BANA during the foreclosure proceedings, and correctly limited Goodson's FDCPA claim to the four letters described above. Second, the district court was not required by the discovery rule or the equitable tolling doctrine to extend the statute of limitations

periods for the August 23, 2009 and May 6, 2010 letters. Third, the district court properly determined that the communications at issue did not constitute debt collection activity.

## I.

First, the district court correctly limited review of Goodson's FDCPA claim to the four letters because her complaint did not allege an FDCPA violation based on deceptive and misleading representations made by BANA during either the foreclosure process or subsequent state court proceedings. A plaintiff may not raise a new theory for the first time in opposition to summary judgment because "[t]o permit a plaintiff to do otherwise would subject defendants to unfair surprise." *Tucker v. Union of Needletrades, Indus. and Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005); *see also Guiffre v. Local Lodge No. 1124*, No. 90-3540, 1991 WL 135576, at *5 (6th Cir. July 24, 1991) (unpublished).

In her opposition to BANA's motion for summary judgment, Goodson alleged, for the first time, that BANA violated the FDCPA when it (1) falsely informed her that it had purchased her property in cash, when in fact it had purchased it through a dead credit bid, and (2) stated that her property had sold at foreclosure.[5] Goodson's complaint, however, alleged no such violations. The complaint stated only the following claim for relief under the FDCPA:

---

[5] On appeal, Goodson clarified the false statements, alleging:

> In the detainer summons, [BANA] falsely stated that the home sold at foreclosure and then had its agent [Shapiro] file an affidavit in the state court attesting that BANA paid cash for the property at foreclosure.

> At the time of those filings, Goodson had no reason to believe those statements were false. Indeed, she had received an earlier letter from [Shapiro] stating that the home had been sold at foreclosure, and the detainer summons was posted at her home, stating it was sold at foreclosure. There were supposed substitute trustee deeds filed showing conveyance of the property to BANA, because it purchased the property at foreclosure. . . .

> The falsity of these statements only began to come to light in July 2011 when she received a letter from BANA stating she owed more money on the loan that it supposedly sold for.

>This action seeks redress for collection practices utilized by Defendant Bank of America, N.A., formerly known as BAC Home Loans Servicing, LP (together, "Bank of America"), that violate the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. § 1692 et seq., by sending to Plaintiff Inge Goodson an FDCPA communication in connection with the collection of a debt which contained at least one false, deceptive or misleading representation or means *when, among other things, it stated that she owed in excess of the amount of the loan and that, according to Bank of America's agent, misidentified the creditor to whom that debt was owed*.

BANA's alleged mischaracterizations of the manner in which it had purchased Goodson's property, or whether her home had been foreclosed on at all, clearly did not (1) represent that Goodson "owed in excess of the amount of the loan" or (2) misidentify the creditor to whom that debt was owed, the specific false representations discussed in her FDCPA claim.

It is true that Goodson mentioned the foreclosure in her complaint, in her response to BANA's motion to dismiss, and in her response to a discovery interrogatory. However, she appears to have mentioned the foreclosure solely to provide a factual basis for her later claim that BANA, in its July 8, 2011 and October 7, 2011 letters, falsely represented that she "owed in excess of the amount of the loan." She did not assert a stand-alone FDCPA violation based on representations made during the foreclosure.

For instance, in her complaint, Goodson states:

>17. Bank of America, via Shapiro & Kirsch, subsequently foreclosed on Ms. Goodson's property in August 2010.

>18. Bank of America and Shapiro & Kirsch have represented that BAC Home Loans Servicing, LP F/K/A Countrywide Home Loans Servicing, LP purchased the property at foreclosure for $260,643.41.

>19. Bank of America and Shapiro & Kirsch have represented that this amount of $260,643.41 was provided as consideration for the purchase of the property.

>20. On or about July 8, 2011, Ms. Goodson received a *communication* from Defendant Bank of America stating that she owed $278,681.40 on the debt as of June 30, 2011. . . .

21. Ms. Goodson disputed the debt via letter dated July 8, 2011. . . .

22. Bank of America responded via letter from its agent dated October 7, 2011. That letter included a payment history on the loan, which shows that no payment was made on the loan associated with the supposed purchase of the property by Bank of America at foreclosure.

23. The *communications* from Defendant violates the FDCPA because they contain false, deceptive or misleading representations.[6]

In order to explain why the July 8, 2011 and October 7, 2011 letters falsely represented the amount owed, Goodson needed to show that, following foreclosure, her loan should have been credited the purchase price. Nowhere did she allege that BANA made false statements during the foreclosure process when it indicated that her property had been foreclosed on, or that it had purchased the property with cash, as opposed to through a dead credit bid.

Likewise, in response to a discovery interrogatory asking Goodson to "[s]tate each and every fact which supports or forms the basis of your claim that BANA violated the FDCPA," Goodson answered:

Ms. Goodson is a consumer under the FDCPA who had a loan associated with her property that was used for [personal and] household purposes. BANA is a debt collector under the FDCPA, as it admitted and stated in some of its letters to Goodson. BANA has represented that it bought the property at auction in August 2010, which is in an amount that would have paid off the loan. Yet, the letters

---

[6] Similarly, in her motion in opposition to BANA's motion to dismiss, Goodson discussed the foreclosure proceedings only to inform the court as to why the July 8, 2011 and October 7, 2011 letters misrepresented the amount owed. Goodson's motion stated:

BANA, via Shapiro & Kirsch, LLP, then foreclosed upon Goodson's property in August 2010. BANA and Shapiro & Kirsch have represented that BANA (specifically via its prior entity, BACHLS) purchased the property at foreclosure for $260,643.41, and that this amount of $260,643.41 was provided as consideration for the purchase of the property.

Around July 8, 2011, Ms. Goodson received a *communication* from BANA stating that she owed $278,681.40 on the debt as of June 30, 2011, which Goodson disputed. Bank of America responded via letter from its agent dated October 7, 2011. That letter included a payment history on the loan, which shows that no payment was made on the loan associated with the supposed purchase of the property by Bank of America at foreclosure. . . .

Goodson contends these *communications* from BANA violate the FDCPA because they contain false, deceptive or misleading representations.

from BANA since August 2010 falsely state, or provide deceptive or misleading representations, that Goodson still owes on the loan and/or that she owes more than any amount due. For example, the October 2011 letter does not show that BANA paid for the property at auction on August 3, 2010, as BANA previously represented under oath to a Tennessee court.

Here, Goodson clearly indicated that the "*letters* from BANA since August 2010" are the communications that "falsely state, or provide deceptive or misleading representations," in violation of the FDCPA. Goodson discussed the foreclosure only to show that the subsequent communications deceptively stated that she owed more money than should have been due following the sale. Ultimately, Goodson contends that the letters were false for failing to account for the foreclosure purchase payment that should have been credited to her loan. She does not allege that BANA made any misrepresentations—either about whether BANA had, in fact, foreclosed on the property at all, or whether it had paid cash in consideration—during the foreclosure proceeding itself.

It is not surprising that Goodson failed to raise an FDCPA claim based on BANA's alleged misrepresentations during the foreclosure proceeding in her initial complaint because, by her own admission, she did not uncover the deceptive representations until discovery.[7] However, had Goodson wished to place the claim properly before the court, she should have submitted an amended complaint, rather than raise it for the first time at the summary judgment stage. "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend

---

[7] Goodson explained,

It was not until BANA's counsel confirmed in October 2011, by enclosing the payment history, that no payment or credit associated with the foreclosure was made on Goodson's loan that Goodson could even begin to realize the potential fraud that BANA, with the complicity of its agent [Shapiro], was committing. It was not until the March 12, 2013 deposition of BANA, when BANA admitted that it does not know if it purchased the property at foreclosure or paid anything of value, that the fraud was confirmed. That, of course, directly belies the materials BANA, via its agent [Shapiro], filed in the state court proceeding and upon which the state court relied in awarding the property to BANA.

Though Goodson discusses BANA's "fraud" in her brief, her complaint fails to assert such an allegation.

the complaint in accordance with Rule 15(a)," which provides for "liberal amendment of the complaint." *Tucker*, 407 F.3d at 788 (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 2723 (3d ed. Supp. 2005)). Absent an amended complaint, the district court correctly limited its review to the four letters.

## II.

Second, the district court correctly determined that the August 23, 2009 and May 10, 2010 letters—which Goodson alleged violated the FDCPA by misidentifying the creditor—were time-barred because they were sent more than one year before Goodson filed her FDCPA claim in district court on July 6, 2012. "An action to enforce any liability created by this [FDCPA] subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, *within one year from the date on which the violation occurs.*" 15 U.S.C. § 1692k(d) (emphasis added). Though Goodson contends that the discovery rule and/or the equitable tolling doctrine should extend the one-year limitations period in light of BANA's fraudulent conduct during the 2010 foreclosure proceedings, neither is applicable.

Assuming arguendo that Goodson properly raised the discovery rule and equitable tolling doctrines, neither applies to the August 23, 2009 and May 10, 2010 letters because she could have discovered, in the exercise of reasonable diligence, that BANA had misidentified the creditor. A reasonable person, after receiving two letters that identified different creditors, would have been put "on notice of the possibility that one of the letters may have misidentified the creditor." Under the discovery rule, "accrual is delayed until the plaintiff has 'discovered' his cause of action." *Gabelli v. SEC*, 133 S.Ct. 1216, 1221 (2013) (internal quotations and citations omitted). A cause of action "is deemed to be discovered when, in the exercise of

reasonable diligence, it could have been discovered." *Id.* Similarly, under the equitable tolling doctrine, the limitations "period will begin to run when the borrower discovers or had reasonable opportunity to discover the fraud involving the complained" of violation. *Foster v. D.B.S. Collection Agy.*, 463 F.Supp.2d 783, 799 (S.D. Ohio 2006).

The only alleged FDCPA violation that was related to the August 2009 and May 2010 letters could have been discovered in the exercise of reasonable diligence at the time that Goodson received the second letter. Goodson contends that BANA's alleged fraudulent conduct during the foreclosure proceedings—proceedings that occurred *after* Goodson received the second letter—prevented her from uncovering the extent of BANA's misrepresentations within the limitations period. However, Goodson does not show how such conduct impeded her ability to discover the particular FDCPA violation complained of, namely that BANA had misidentified the creditor. Consequently, neither the discovery rule nor the equitable tolling doctrine is applicable.[8]

III.

Third, the district court correctly found that the July 8, 2011 and October 7, 2011 letters—which Goodson alleged falsely represented that she owed in excess of her loan balance and misidentified the creditor—did not violate the FDCPA because they were not communications made "in connection" with debt collection activities. Under the FDCPA, "[a] debt collector may not use any false, deceptive, or misleading representation or means *in connection with the collection of any debt*." 15 U.S.C. § 1692e (emphasis added). "The text of § 1692e makes clear that, to be actionable, a communication need not itself be a collection attempt; it need only be 'connect[ed]' with one." *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169,

---

[8] Because the August 23, 2009 and May 6, 2010 letters are time-barred, we do not address whether they were communications made in connection with debt collection activity.

173 (6th Cir. 2011). However, it is equally clear that "'the statute does not apply to *every* communication between a debt collector and a debtor.'" *Id.* (quoting *Gburek v. Litton Loan Serv. LP*, 614 F.3d 380, 385 (7th Cir. 2010)) (emphasis in original).

The July 8, 2011 and October 7, 2011 letters were not made "in connection" with debt collection activities because their "animating purpose" was not to induce Goodson to make payments on her defaulted mortgage. "[F]or a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." *Grden*, 643 F.3d at 173. Though "[t]he 'animating purposes' of the communication is a question of fact that generally is committed to the discretion of the jurors, not the court," *Estep v. Manley Deas Kochalski, LLC*, 552 Fed.App'x 502, 505 (6th Cir. 2014), where "a reasonable jury could not find that an animating purpose of the statements was to induce payment," summary judgment is appropriate. *Grden*, 643 F.3d at 173.

A review of the language and structure of the two letters shows that they were sent to inform Goodson, rather than to induce payment. This review takes into account the following factors: (1) the nature of the relationship of the parties; (2) whether the communication expressly demanded payment or stated a balance due; (3) whether it was sent in response to an inquiry or request by the debtor; (4) whether the statements were part of a strategy to make payment more likely; (5) whether the communication was from a debt collector; (6) whether it stated that it was an attempt to collect a debt; and (7) whether it threatened consequences should the debtor fail to pay. *Id.*; *McDermott v. Randall S. Miller & Assocs., P.C.*, 835 F. Supp. 2d 362, 370−71 (E.D. Mich. 2011).

First, the "animating purpose" of the July 8, 2011 letter was to inform Goodson about a

change in her loan servicer, not to induce her to resume payments on her defaulted mortgage. In

pertinent part, the letter provided:

IMPORTANT MESSAGE ABOUT YOUR LOAN

Effective July 1, 2011, the servicing of home loans by our subsidiary-BAC Home
Loans Servicing, LP, transfers to its parent company-Bank of America, N.A.
Based upon our records as of June 30, 2011, the home loan account noted above
is affected by this servicing transfer. The information contained in this
communication does not change or affect any other communications you may
have received or will receive regarding this servicing transfer.

IMPORTANT ADDITIONAL INFORMATION

Under the federal Fair Debt Collections Practices Act and certain state laws, Bank
of America, N.A. is considered a debt collector. As a result, we are sending you
the enclosed Fair Debt Collection Practices Act Notice containing important
information about your loan and your rights under applicable federal and state
law. . . .

THANK YOU

We appreciate the opportunity to serve your home loan needs. [ . . . ]

At the bottom of the first page, in bold, BANA included the following boilerplate

disclaimer:

Bank of America, N.A. is required by law to inform you that this communication
is from a debt collector attempting to collect a debt, and any information obtained
will be used for that purpose. Notwithstanding the foregoing, if you are currently
in a bankruptcy proceeding or have received a discharge of the debt referenced
above, this notice is for informational purposes only and is not an attempt to
collect a debt.

It was not until the second page, in a section tracking the FDCPA notice requirements of

15 U.S.C. § 1692g, that BANA falsely represented the amount of money Goodson owed:

(a) The amount of the debt: As of June 30, 2011, you owe $278,681.40. Because
of interest, late charges, and other charges that may vary from day to day, the
amount due on the day you pay may be greater. Therefore, if you pay the amount
shown above, an adjustment may be necessary after we receive your payment, in

which event we will inform you or your agent before accepting the payment for collection.

Though the letter was sent by a debt collector who had had no relationship with Goodson prior to her default, and stated the balance owed as of June 30, 2011, the factors in favor of finding that it had been sent in connection with a debt collection activity end there. The letter did not make an express demand for payment, list a payment due date or threaten consequences should Goodson fail to pay. Further, the standard disclaimer language—which stated that BANA was "*a debt collector attempting to collect a debt*"—did not, by itself, transform the informational letter into debt collection activity. Courts have found that a disclaimer identifying the communication as an "attempt to collect a debt[] . . . does not automatically trigger the protections of the FDCPA." *Gburek*, 614 F.3d at 386 n.3. Like the Seventh Circuit in *Gburek*, the Tenth Circuit in *Maynard v. Cannon*, 401 F.App'x 389 (10th Cir. 2010), has found the inclusion of an FDCPA notice "legally irrelevant." *Id.* at 395.

Finally, the structure of the letter supports finding that its "animating purpose" was to inform Goodson of a change in her loan servicer, not to induce payment. The first page of the letter opened with the header "IMPORTANT MESSAGE ABOUT YOUR LOAN," followed by a discussion of the service provider change, without any mention of payment or Goodson's outstanding balance. It next offered a standard FDCPA disclaimer, before concluding with a "THANK YOU" section. The allegedly false representation of the amount owed did not appear until the second page when BANA included language that tracks the notice requirements of 15 U.S.C. § 1692g, for communications made in connection with the collection of a debt. Though Goodson suggests that inclusion of this language proves that BANA believed it was sending a communication in connection with debt collection activities, and therefore the letter was in connection with debt collection activities, BANA was likely simply trying to conform to FDCPA

requirements. Thus, for the same reason that inclusion of a standard FDCPA disclaimer, on its own, should not always trigger the protections of the FDCPA, additional disclosures tracking the notice requirements of 15 U.S.C. § 1692g—a provision intended to ensure that the consumer is informed—should not automatically transform an otherwise informational letter into a debt collection activity. In light of the language and structure of the July 8, 2011 letter, a reasonable jury could not find that its animating purpose was to induce payment.

The October 7, 2011 letter, similarly, was sent not to induce payment, but rather to respond to Goodson's inquiry. From the outset, Blank Rome LLP informed Goodson that it represented "Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, LP ("Bank of America") for the *sole purpose of responding to your correspondence* dated July 8, 2011," in which "you dispute the validity of the debt." When communications are "merely a ministerial response to a debtor inquiry, rather than part of a strategy to make payment more likely," this court has found that inducing payment is not their animating purpose. *See, e.g.*, *Grden*, 643 F.3d at 173. Further, the letter did not make a demand for payment, state a balance due, indicate that it was an attempt to collect a debt, or threaten negative consequences should Goodson fail to pay. Under the circumstances presented, no reasonable jury could find that BANA sent the letter to induce payment.

To the extent Goodson argues that the "July 2011 letter and the October 2011 letter are part of BANA's strategy to make payment more likely," and thus should be viewed together, her claim is equally meritless. Since the October 2011 was sent only in response to Goodson's inquiry, to find that the July 2011 and October 2011 letters combined show a "strategy" on the part of BANA to induce payment would permit a debtor to "manufacture" collection activity simply by submitting an inquiry in response to an informational communication.

The judgment of the district court is AFFIRMED.