# United States Court of Appeals

### For the Eighth Circuit

_____

No. 19-3717
_____

David Heinz

*Plaintiff - Appellant*

v.

Carrington Mortgage Services, LLC

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: November 18, 2020
Filed: July 9, 2021

_____

Before SHEPHERD, STRAS, and KOBES, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

David Heinz filed suit against Carrington Mortgage Services, LLC (Carrington) asserting claims under the Fair Debt Collection Practices Act (FDCPA) and Minnesota law after Carrington allegedly engaged in misrepresentations and unfair conduct when processing Heinz's application for loss mitigation assistance and selling Heinz's home through a foreclosure sale. After dismissing the state law

claims, the district court[1] granted summary judgment in favor of Carrington on the FDCPA claim, concluding that Carrington's alleged misrepresentations and unfair conduct were not made or carried out in connection with an attempt to collect a debt, and thus Heinz could not sustain a claim under the FDCPA. Heinz appeals, and having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

In March 2008, David Heinz obtained a loan from Countrywide Bank, FSB, in the amount of $247,344. The loan was evidenced by a promissory note and secured by a mortgage on Heinz's Eagan, Minnesota area residence. During the life of the loan, Heinz defaulted several times. For example, in 2010, Heinz defaulted on the loan, but after applying for loss mitigation assistance, he was granted a loan modification which cured his default and brought him current on his payments. And, in 2013, Heinz again defaulted on the loan and applied for loss mitigation assistance. Heinz was granted a second loan modification which cured this default and brought him current on his payments. In June 2016, both the mortgage and note were assigned to Bank of America, N.A. (BANA).

In September 2016, after another default, BANA initiated a foreclosure process and notified Heinz that the foreclosure sale of his home was scheduled to occur on August 1, 2017. Heinz again applied for loss mitigation assistance. On March 4, 2017, BANA notified Heinz by letter that his application for a loan modification was no longer being reviewed because he had failed to provide the requisite documents to complete his application. On May 18, 2017, BANA again notified Heinz by letter that his application remained incomplete and was no longer under review because of his failure to provide required documents to complete the application.

---

[1]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

On July 11, 2017, Carrington became the servicer of Heinz's loan. Heinz was provided notice of the transfer from BANA to Carrington,[2] after which he spoke to a Carrington representative who confirmed that the foreclosure sale scheduled for August 1, 2017, would proceed as scheduled. This representative also allegedly told Heinz that if he wished to prevent the foreclosure sale, he would have to produce a loss mitigation package by midnight that same evening. After the call, Heinz contacted the Minnesota Attorney General's Office for assistance in dealing with Carrington regarding a new loss mitigation application. The Minnesota Attorney General's Office began to represent Heinz, and Heinz asserts that he relied on the Office to relay to him communications and information it received from Carrington regarding his loan.

On August 2, 2017, Heinz was notified by letter that the foreclosure sale had been postponed to September 9, 2017, before he was later notified that the foreclosure sale had been again postponed to November 14, 2017. Between August and November 2017, Heinz made requests to Carrington for loss mitigation assistance and loan modification. In connection with these requests, Heinz mailed to Carrington financial information including tax returns, proof of income, and statement of living expenses. In written communications and telephone calls, Carrington advised Heinz that the information provided was incomplete and Heinz made various attempts to provide the requested documentation.

In a letter dated November 8, 2017, a representative with the Minnesota Attorney General's Office notified Heinz that, on November 7, 2017, during a call between the Attorney General's Office and Carrington, a Carrington representative allegedly confirmed that Heinz's file had been sent to underwriting and was awaiting a final determination. The representative explained that when the application was sent to underwriting, it was considered complete and would force the postponement of the foreclosure sale.

---

[2]BANA apparently remained the promisee under the promissory note and the mortgagee under the real estate mortgage, with Carrington assuming only the servicing responsibilities.

Nevertheless, Carrington proceeded with the scheduled foreclosure sale on November 14, 2017. BANA purchased the property for $225,120. The foreclosure sale was subject to a six-month redemption period, which would have allowed Heinz to redeem the property any time before May 14, 2018. Prior to the sale, Heinz did not receive a written denial of his second mortgage assistance application. In fact, Carrington mailed Heinz a cancellation notice, dated two days *after* the foreclosure sale, which advised Heinz for the first time that his second loss mitigation assistance application had been cancelled and would no longer be considered. On April 2, 2018, through a representative from the Minnesota Attorney General's Office, Heinz requested that Carrington rescind the foreclosure sale. Despite twice telling the representative from the Minnesota Attorney General's Office that it would respond to the rescission request, Carrington did not respond to Heinz until May 15, 2018—one day after the redemption period expired—explaining that it was declining to rescind the sale. In the letter explaining the basis for its decision, Carrington stated that it would not rescind the sale because Heinz never provided all the requisite documentation to complete the loss mitigation assistance application. The letter also notified Heinz that the home had been sold to a third-party bidder at the foreclosure sale, when the home had in fact been sold to BANA, the mortgagee.

On June 8, 2018, Heinz filed suit against Carrington in Minnesota state court, alleging violation of the FDCPA and two claims under Minnesota law and seeking rescission of the foreclosure sale, a temporary restraining order preventing eviction, and damages. Carrington then removed the action to federal court based on federal question jurisdiction. By the summary judgment stage, Heinz's only remaining claim was that Carrington violated the FDCPA by making false representations to Heinz about the state of his loss mitigation assistance application and the foreclosure sale, by ignoring his application, and by delaying communications so that Heinz could not take advantage of his legal remedies. The district court granted summary judgment in favor of Carrington, concluding that Carrington's communications and conduct in the course of its dealings with Heinz were not in connection with an attempt to collect a debt. While the district court determined that Carrington qualified as a debt collector, it stated that the dispositive inquiry at summary

-4-

judgment was "whether a reasonable jury could conclude from the record that Carrington's communications and conduct related to the collection of a debt as the FDCPA requires," ultimately answering this question in the negative. In reaching this conclusion, the district court applied the "animating purpose" test, which considers the content of each communication individually, and determined that they were not made in connection with the collection of a debt. Further, as to the challenged communications that occurred after the foreclosure sale, the district court also determined that they were immaterial because they had no impact on Heinz's legal rights. Heinz appeals the adverse grant of summary judgment.

II.

Heinz asserts on appeal that the district court erred in granting summary judgment to Carrington because the evidence Heinz presented was sufficient to allow a jury to conclude that Carrington used false, deceptive, and misleading representations and unfair and unconscionable means to collect on the underlying mortgage debt. Heinz further asserts that the district court erroneously narrowed the "animating purpose" test. We review the grant of summary judgment de novo, "viewing the evidence and drawing all reasonable inferences in the light most favorable to . . . the nonmoving party." Main v. Ozark Health, Inc., 959 F.3d 319, 323 (8th Cir. 2020) (citation omitted). "Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. 'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Green Plains Otter Tail, LLC v. Pro-Env't, Inc., 953 F.3d 541, 545 (8th Cir. 2020) (citation omitted).

The FDCPA, which is designed to prevent abusive debt collection practices, governs the conduct of debt collectors in relation to any attempt to collect a debt. See 15 U.S.C. § 1692(a). The FDCPA specifically prohibits "false, deceptive, or misleading representation or means in connection with the collection of any debt" and "unfair or unconscionable means to collect or attempt to collect any debt." Id.

§§ 1692e, 1692f. The parties agree that the dispositive issue in this case is whether the challenged communications and conduct were made in connection with the collection of a debt, acknowledging both that the promissory note constitutes a debt and that Carrington is a debt collector under the FDCPA.

Heinz specifically identifies the following communications made by Carrington as containing false, deceptive, or misleading representations or means:

- the letter from Carrington to Heinz dated October 8, 2017, stating that Heinz's loan modification application had been cancelled because Carrington had not received all of Heinz's application materials;

- the letter from Carrington to Heinz dated October 20, 2017, in response to a complaint against Carrington through the Minnesota Attorney General's Office, detailing the factual background of Heinz's efforts to complete a loss mitigation assistance application and stating that Carrington had not received all the documents necessary for the loss mitigation assistance application to be complete;

- the phone call on November 7, 2017, between a Carrington representative and the Minnesota Attorney General's Office where the representative stated Heinz's application had been sent to underwriting and was awaiting a decision; and

- the post-foreclosure sale letter from Carrington to Heinz, dated May 15, 2018, stating that Carrington did not receive all necessary information for the completion of Heinz's loss mitigation assistance application before the deadline when it had previously represented that the application had been sent to underwriting; that Carrington sold the property to a third-party at the foreclosure sale, when it actually sold the property to BANA; and that despite Carrington's repeated efforts to obtain all necessary information for the loss mitigation assistance application, Heinz failed to provide it.

Heinz also alleges that Carrington used unfair and unconscionable means to collect the mortgage debt by informing Heinz it would review his loss mitigation assistance application and collecting all the documents from Heinz before ignoring the application and conducting the foreclosure sale. Heinz also alleges that Carrington delayed its post-foreclosure communications with Heinz to preclude him from being able to bring a claim under the Minnesota dual-tracking statute, Minn. Stat. Ann. § 582.043, subdiv. 6, which prohibits a servicer from referring a mortgage loan for foreclosure when a loss mitigation application is pending.

In considering whether certain statements or conduct are in connection with the collection of a debt for the purposes of § 1692e, we employ the "animating purpose test." McIvor v. Credit Control Servs., Inc., 773 F.3d 909, 914 (8th Cir. 2014) (adopting the animating purpose test). Under this test, "for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." Id. (citation omitted). An explicit demand for payment is not required for a communication to satisfy the animating purpose test; implicit demands for payment may satisfy the test based upon the specific content of the communications. See id. "Though '[t]he "animating purpose[]" of the communication is a question of fact that generally is committed to the discretion of the jurors, not the court,' where 'a reasonable jury could not find that an animating purpose of the statements was to induce payment,' summary judgment is appropriate." Goodson v. Bank of Am., N.A., 600 F. App'x 422, 431 (6th Cir. 2015) (first alteration in original) (citations omitted).

Heinz asserts that the Supreme Court's statement that nonjudicial foreclosure is a debt collection activity renders each of the identified communications in connection with the attempt to collect a debt, citing Obduskey v. McCarthy & Holthus LLP, 139 S. Ct. 1029, 1036 (2019) ("Foreclosure, in turn, is 'the process in which property securing a mortgage is sold to pay off the loan balance due.' In other words, foreclosure is a means of collecting a debt." (citation omitted)). However, in Obduskey, the Supreme Court made this statement in considering whether a party qualified as a "debt collector" for the purposes of the FDCPA and was not

considering specific communications regarding foreclosure proceedings. Although nonjudicial foreclosure is a debt collection activity, it does not follow that any communication generated during a nonjudicial foreclosure is made "in connection with the collection of a debt." See McIvor, 773 F.3d at 915 ("[The debtor] contends that *any* communication about a debt from a debt collector to a consumer reporting agency is *always* intended to facilitate collection. We decline to draw such a sweeping conclusion . . . ."). Thus, we must look at each communication individually to determine whether it was made in connection with the collection of a debt for purposes of the FDCPA.

Considering the content of each of the communications, we conclude that none were made in connection with the collection of a debt. First, the October 8, 2017 letter was nothing more than a notification that Heinz's loss mitigation assistance application had been cancelled due to Heinz's failure to provide the required documentation. Although the letter stated, "if your loan is delinquent collection activity may continue, including referral to foreclosure or foreclosure sale," this boilerplate, conditional reference to collection activities, which uses the word "if," does not mean that the letter was sent "in connection with the collection of a debt," particularly where the only reference to the loan was its identifying information, including the property address and loan number, and the letter did not contain any information about the loan, such as the principal amount remaining due, the past due amount, or a request for payment. See Bailey v. Sec. Nat'l Servicing Corp., 154 F.3d 384, 388-89 (7th Cir. 1998) (holding that the communication was not made in connection with the collection of a debt because it merely described the status of the debtor's account and the consequences of missing future payments).

Similarly, the letter dated October 20, 2017, did not make any mention of the loan apart from its identifying information and did not include a demand for payment or statement of amounts due to bring the loan current. And the letter expressly stated that "this letter is not an attempt to collect a debt from [the borrower] but merely provides informational notice regarding the status of the loan." The November 7, 2017 phone call between Carrington representatives and the Minnesota Attorney

General's Office, during which a Carrington representative falsely stated that Heinz's loss mitigation assistance application had been sent to underwriting, included no discussion of the loan, its terms, any amount due, or any request or demand for payment. We find there is no evidence from the record to conclude that Carrington made these communications in an attempt to induce payment of the mortgage debt. See, e.g., Grden v. Leikin Ingber & Winters PC, 643 F.3d 169, 173 (6th Cir. 2011) (concluding that animating purpose of communication from debt collector was not to collect debt even though communications stated a balance due because statements did not demand payment or threaten consequences if debtor did not pay and statements were in response to debtor's inquiry regarding balance statement, not as part of a strategy from debt collector to make payment on debt more likely). To the contrary, the October 20 and November 7 communications arguably served to thwart Heinz's efforts to arrange for the payment of his mortgage indebtedness.

Finally, the post-foreclosure sale letter, in response to Heinz's complaint against Carrington through the Minnesota Attorney General's Office, again detailed the factual history of Heinz's efforts to apply for loss mitigation assistance and stated that, despite Carrington's attempts to obtain the documentation needed from Heinz to complete the application, the information was never provided, so it proceeded to sell the home at a foreclosure sale. The letter contained only basic identifying information about the loan, including the loan number, and did not include details about the loan such as the principal amount owing or amount in arrears. Further, the timing of the letter supports the conclusion that it was not sent in connection with an attempt to collect a debt because the property had already been sold at a foreclosure sale and Carrington was no longer looking to Heinz for payment of the mortgage debt. Because the foreclosure sale had already occurred, we agree with the district court that any purported misrepresentations in this communication are immaterial. See Hill v. Accounts Receivable Servs., LLC, 888 F.3d 343, 346 (8th Cir. 2018) ("[B]ecause '[a] statement cannot mislead unless it is material, [] a false but non-material statement is not actionable.'" (second and third alterations in original) (citation omitted)).

The substance of each of these communications demonstrates that none were made in connection with an attempt to collect on the underlying mortgage debt. More troublesome, however, is the inclusion in the disclosures section of each letter of the so-called "Mini-Miranda" statement. This disclosure states:

> This communication is from a debt collector and it is for the purpose of collecting a debt and any information obtained will be used for that purpose. This notice is required by the provisions of the Fair Debt Collection Practices Act and does not imply that we are attempting to collect money from anyone who has discharged the debt under the bankruptcy laws of the United States.

At first glance, it may seem implausible that a communication labeled by the sender as "for the purpose of collecting a debt" would, in fact, not be sent "in connection with the collection of a debt". But these types of boilerplate mini-Miranda disclosures, see 15 U.S.C. § 1692e(11), "do[] not automatically trigger the protections of the FDCPA, just as the absence of such [disclosures] does not have dispositive significance." Gburek v. Litton Loan Servicing LP, 614 F.3d 380, 386 n.3 (7th Cir. 2010); see also Lewis v. ACB Bus. Servs., Inc., 135 F.3d 389, 399-400 (6th Cir. 1998) (similar). Rather, we look to the *substance* of the letter—what information it provides and what it asks the borrower to do—to determine whether an "animating purpose" is "to induce payment by the debtor." McIvor, 773 F.3d at 914 (citation omitted). And here, for the reasons we have already explained, the letters did not try to induce Heinz to pay his outstanding debt. We thus conclude that a routine disclosure statement that is at odds with the remainder of the letter does not turn the communication into something that it is not—in this case, a communication made in connection with the collection of a debt for the purposes of the FDCPA.[3] See Goodson, 600 F. App'x at 432 ("[T]he standard disclaimer

---

[3]We note that there is no evidence in the record demonstrating that Heinz relied on or understood Carrington's communications as related to a debt collection attempt. Indeed, there is nothing in the record to suggest that, in response to these communications, Heinz took any action to procure the necessary funds or to remit

-10-

language—which stated that BANA was '*a debt collector attempting to collect a debt*'—did not, by itself, transform the informational letter into debt collection activity. Courts have found that a disclaimer identifying the communication as an 'attempt to collect a debt[] . . . does not automatically trigger the protections of the FDCPA.'" (second and third alterations in original) (citation omitted)).

We are similarly unpersuaded by Heinz's argument regarding Carrington's alleged unfair and unconscionable means in attempting to collect the underlying mortgage debt pursuant to § 1692f. We also conclude that Carrington's conduct in allowing Heinz to submit an application and then ignore it as well as allegedly delaying communications with Heinz to run out the statute of limitations on a potential claim of a violation of the Minnesota dual-tracking statute was not done in an attempt to collect upon a debt under § 1692f. Although Heinz was undoubtedly frustrated with his repeated unsuccessful attempts to complete his loss mitigation assistance application and Carrington's apparently duplicative requests and belated communications, the fact remains that Carrington did not at any point in these communications discuss, reference, or request payment on the underlying mortgage debt. Further, with respect to Heinz's claim that Carrington delayed its communications to preclude Heinz from asserting a dual-tracking claim, although Carrington's belated communications may leave something to be desired in terms of customer communications, Heinz was aware that dual tracking was going on and need not have waited for final communication from Carrington to preserve his ability to pursue such a claim.

We are mindful that Heinz lost his home at a foreclosure sale after being subjected to an extended back-and-forth with Carrington in which he apparently made repeated efforts to comply with Carrington's demands for information and documents. While we are sympathetic to Heinz's position, the record does not demonstrate that Carrington's communications were made in connection with the

---

any payment to bring his account current. Instead, Heinz continued to pursue the loss mitigation assistance application.

collection of a debt or that its actions were carried out in an attempt to collect the underlying mortgage debt.  For these reasons, we conclude the district court did not err in granting summary judgment to Carrington.

III.

For the foregoing reasons, we affirm.

_____