[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 19-10204

_____

CONSTANCE DANIELS,

Plaintiff-Appellant,

*versus*

SELECT PORTFOLIO SERVICING, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:18-cv-01652-JSM-CPT

_____

Before JORDAN, LAGOA, and BRASHER, Circuit Judges.

JORDAN, Circuit Judge:

Constance Daniels sued Select Portfolio Servicing under the Fair Debt Collections Practices Act, 15 U.S.C. §§ 1692 et seq., and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.72, alleging that a series of monthly mortgage statements misstated a number of items, including the principal amount due. She claimed that, by sending her the incorrect mortgage statements, Select Portfolio violated the FDCPA's prohibitions on harassment or abuse, false or misleading representations, and unfair practices. *See* 15 U.S.C. §§ 1692d, 1692e(2)(A), 1692e(10), 1692f(1). She also claimed that the statements violated the FCCPA's prohibitions on harassment and on attempts to collect on debt that is not legitimate. *See* Fla. Stat. §§ 559.72(7), 559.72(9). The district court dismissed Ms. Daniels' complaint with prejudice, agreeing with Select Portfolio that the mortgage statements in question were not communications in connection with the collection of a debt and therefore not covered by the FDCPA and the FCCPA.

The question presented in this appeal—one of first impression in our circuit—is whether monthly mortgage statements required by the Truth in Lending Act, 15 U.S.C. § 1638, and its regulations can constitute communications in connection with the collection of a debt under the FDCPA and the FCCPA. We hold that they may, at least when—as here—they contain debt-collection language that is not required by the TILA or its regulations and

the context suggests that they are attempts to collect or induce payment on a debt. In such circumstances, coverage under the FDCPA and the FCCPA is plausible.

## I

In reviewing the district court's Rule 12(b)(6) dismissal order, we accept as true the facts set out by Ms. Daniels in her complaint and its attached exhibits. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). The complaint and the exhibits tell the following story.

In 2005, Ms. Daniels executed a promissory note with Countrywide Home Loans, secured by a mortgage on her home in Florida. In March of 2009, after falling behind on her payments, she entered into a mortgage modification agreement with Countrywide. She agreed to make interest-only monthly payments (plus escrow amounts) for 10 years, with the principal balance remaining at $189,911.00 for that period. The interest-only monthly payments for the first year were $813.12, but for each succeeding year during the 10-year period the interest rate (and the payments) would increase pursuant to a schedule in the modification agreement. After the 10-year period, the monthly payments would include both principal and interest, again pursuant to a schedule set forth in the agreement. *See* D.E. 23 at 3 & Ex. A.

For over a year, Ms. Daniels made her interest-only monthly payments on time. Then Countrywide sold, transferred, or assigned the mortgage to Wells Fargo Bank. In June of 2010, Wells

Fargo refused to accept the interest-only payments from Ms. Daniels. Claiming that Ms. Daniels had defaulted on the note and mortgage, Wells Fargo filed a foreclosure action in state court. Select Portfolio was the mortgage servicer at this time. *See id.* at 3–4.

In December of 2015, the state court granted Ms. Daniels' motion to enforce the earlier mortgage modification agreement, ordered Ms. Daniels to resume making payments according to the terms of the agreement, and sanctioned Wells Fargo for improperly bringing the foreclosure action. The sanctions included requiring Wells Fargo to waive interest on the mortgage debt for certain periods of time and to pay Ms. Daniels' attorney's fees. *See id.* at 4–5 & Exs. B, C.

Because the dispute between Wells Fargo and Ms. Daniels had lasted for years, certain interest and escrow payments had either not been made or had not been accepted. The state court ruled in May of 2016 that these sums, totaling $60,808.83, would be added "to the end of" the loan modification agreement. *See id.* at 5–8 & Ex. C. At that time, Ms. Daniels' interest-only monthly payments (not including escrow amounts) were $928.25 pursuant to the schedule set out in the modification agreement. *See id.* at 9.

Following the conclusion of the foreclosure action, Select Portfolio sent Ms. Daniels a number of monthly mortgage statements. Not all the statements were the same in terms of format,

language, and amounts, so we summarize the November 2016 statement, which Ms. Daniels claims was the most problematic.

The November 2016 statement listed Select Portfolio's address and phone number, and had entries for "loan due date," "amount due," "transaction activity," "past payments breakdown," "past due payments," "total amount due," "interest-bearing principal," "deferred principal," "outstanding principal," and "late fee." It included a "delinquency notice" box, which listed overdue payments and the amount needed to bring the account current. And it had a "monthly payment coupon" at the bottom of the first page. The coupon listed the late fee that would be charged if the payment was not made by the due date, and it contained the following instructions: "Please detach bottom portion and return with your payment," and "Make checks payable to Select Portfolio Servicing." *See id.* at Ex. E.

The November 2016 statement also contained the following language:

> ◆ This is an attempt to collect a debt. All information obtained will be used for that purpose.
>
> ◆ You are late on your mortgage payments. Failure to bring your loan current may result in fees and foreclosure – the loss of your home.
>
> ◆ [Select Portfolio] has completed the first notice or filing required to start a foreclosure.

◆ Paying your mortgage on time is an important obligation, so please pay on or before the payment due date.  Payments are not considered paid until received and posted to your account.

◆ [Select Portfolio] furnishes information to consumer reporting agencies.  You are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your Note and Mortgage.

*Id.* The statement did not indicate that it was being sent for informational purposes.[1]

According to Ms. Daniels, the November 2016 statement significantly misstated the deferred principal balance, the outstanding principal balance, and the amount of the interest-only payment that was due.  The statement, for example, listed the deferred principal as $83,259.92 (when the actual sum to be added to the end of the modification agreement was $60,808.83); listed the outstanding principal balance as $356,121.53 (when it should have

---

[1]Ms. Daniels did not attach all the statements to her complaint.  But the ones that were attached contained some of the same debt-collection language found in the November 2016 statement.  For example, the statements from July, August, and September of 2017 all said: "This is an attempt to collect a debt. All information obtained will be used for that purpose." *See* D.E. 23 at Comp. Ex. G.  They also included Select Portfolio's address and phone number, as well as a payment coupon with the same late fee information and payment instructions contained in the November 2016 statement. *See id.*

been $250,714.83 [$189,911.00 + $60,803.83]); and listed the monthly payment due as $2,244.90 (when the actual figure was $982.25 based on the schedule in the loan modification agreement).

Ms. Daniels alleged that the "delinquency notice" box in the November 2016 statement also misrepresented that the loan was in arrears for 197 days based on six unpaid installments of $2,244.90 (when there was no delinquency at all). The "delinquency notice" box stated that the "total" due was $9,075.71 and provided the following instruction: "You must pay this amount to bring your loan current." The payment coupon attached to the statement also incorrectly listed the amount due as $9,075.71. *See id.* at 10–11, 12–13, 15–16, & Ex. E.

In October and December of 2017, Ms. Daniels' counsel sent letters to Select Portfolio asserting that there was no deferred principal balance (because the $60,808.83 was to be added to the end of the loan modification agreement pursuant to the state court's order) and demanding a specific line-by-line accounting of the deferred balance amount. Select Portfolio did not respond to the letters.

In June of 2018, Ms. Daniels sued Select Portfolio under the FDCPA, 15 U.S.C. §§ 1692d, 1692e, 1692f, and the FCCPA, Fla. Stat. §§ 559.72(7), 559.72(9). She alleged that the erroneous monthly mortgage statements were harassing, false, and misleading, and that by sending them Select Portfolio engaged in unfair

practices in connection with the collection of a debt in violation of the FDCPA and the FCCPA.[2]

As noted, the district court dismissed Ms. Daniels' claims with prejudice.  Agreeing with Select Portfolio, it ruled that the monthly mortgage statements complied with the TILA and its regulations, and so were not communications in connection with the collection of a debt under the FDCPA and the FCCPA. It also denied leave to amend because it concluded that any amendment by Ms. Daniels would be futile.

## II

We review orders granting a Rule 12(b)(6) motion de novo. *See Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013); *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir. 2006).  The question here is whether Ms. Daniels pled sufficient facts to plausibly allege FDCPA and FCCPA coverage.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at

---

[2] The FCCPA is the Florida analogue to the FDCPA, and generally the two Acts are construed in similar fashion where the statutory language is the same. *See Oppenheimer v. I.C. Sys., Inc.*, 627 F.3d 833, 839 (11th Cir. 2010).

678. *See also Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) ("Petitioners stated simply, concisely, and directly events that, they alleged, entitled them to damages from the city. Having informed the city of the factual basis for their complaint, they were required to do no more to stave off threshold dismissal for want of an adequate statement of their claim.").

## III

We start with the basics, and first address whether the monthly mortgage statements sent by Select Portfolio constitute "communications" about a "debt." The FDCPA and the FCCPA both define a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *See* 15 U.S.C. § 1692a(5); Fla. Stat. § 559.55(6). And they both define "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." *See* 15 U.S.C. § 1692a(2); Fla. Stat. § 559.55(2).

We have already held that a homeowner's promissory note, secured by a mortgage on the property, constitutes a "debt" under the FDCPA. *See Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012) ("T[he definition of 'debt' in the FDCPA] clearly encompasses the Reeses' payment

obligation under the promissory note [secured by a mortgage.]"). So the obligation of Ms. Daniels to pay the promissory note, secured by a mortgage on her home, is a "debt" under the FDCPA and the FCCPA.

The mortgage statements also constitute a "communication" under the FDCPA and the FCCPA. The definition of "communication" is "broad," *Hart v. Credit Control, LLC*, 871 F.3d 1255, 1258 (11th Cir. 2017), and the statements certainly conveyed information from Select Portfolio to Ms. Daniels regarding her debt under the promissory note. "In order to be considered a communication, the only requirement of the information that is to be conveyed is that it must be regarding a debt." *Id.* (holding that a voicemail left by a debt collector who wanted to speak to a consumer about a debt was a "communication" under the FDCPA).

## IV

Ms. Daniels alleges that Select Portfolio, by sending her mortgage statements with incorrect information about her debt under the promissory note, violated §§ 1692d, 1692e(2)(A), 1692e(10), and 1692f(1) of the FDCPA and §§ 559.72(7) and 559.72(9) of the FCCPA. Select Portfolio responds that the mortgage statements were required by the TILA, 15 U.S.C. §§ 1601 et seq., and its regulations and therefore did not constitute communications "in connection with the collection of a[ ] debt" under

the FDCPA or in connection with "collecting [a] . . . debt[ ]" under the FCCPA.

Congress passed the TILA and the FDCPA to protect consumers. The TILA, enacted in 1968, is meant to "assure a meaningful disclosure of credit terms…and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). The FDCPA, enacted almost a decade later in 1977, is meant to "eliminate abusive debt collection practices by debt collectors, to ensure those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

We begin by analyzing the monthly mortgage statements under the FDCPA and the FCCPA. We then turn to the TILA.

## A

The substantive FDCPA provisions relied on by Ms. Daniels require that the challenged communications be "in connection with the collection of a[ ] debt." *See* 15 U.S.C. §§ 1692d, 1692e(10), 1692f(1). The substantive FCCPA provisions similarly require that the challenged action be made in connection with "collecting [a] . . . debt[.]" Fla. Stat. §§ 559.72(7), 559.72(9). Both Acts, therefore, require a nexus between the communication and the collection of a debt.

We have said that the FDCPA's "in connection with the collection of a[ ] debt" language asks whether the "challenged conduct is related to debt collection," i.e., is "an attempt to 'collect' [a] debt." *Reese*, 678 F.3d at 1216, 1217. And we have recognized that a communication can "have dual purposes," such as providing a consumer with information and demanding payment on a debt. *See id.* at 1217 ("The fact that the letter and documents relate to the enforcement of a security interest does not prevent them from also relating to the collection of a debt within the meaning of § 1692e.").

In *Reese*, for example, we held that a law firm's dunning letter was "in connection with the collection of a[ ] debt" because it (a) demanded full and immediate payment, (b) threatened collection and attorney's fees if the full payment was not paid, and (c) was accompanied by documents which stated that the law firm was attempting to collect a debt. *See id.* at 1216–17. Two years later, in *Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299, 1303 (11th Cir. 2014), we held that a letter from a law firm advising a consumer that she was behind in her residential mortgage payments was "in connection with the collection of a[ ] debt" because it (a) listed the amount due to the lender, (b) indicated that failure to dispute the amount would result in the debt being assumed valid by the lender, and (c) stated that it was for purpose of collecting a debt. We recognized that the letter did not contain an express demand for payment, but concluded that taken as a whole it "was an implicit demand for payment." *Id.* at 1303 n.2.

Based on *Reese* and *Caceres*, we conclude that Ms. Daniels plausibly alleged that the mortgage statements for November of 2016 and for July, August, and September of 2017 were communications "in connection with the collection of a[ ] debt" under the FDCPA and in connection with "collecting [a] . . . debt[ ]" under the FCCPA. In the words of *Reese*, 678 F.3d at 1216, the statements were "related to debt collection." First, the statements expressly said that they were "an attempt to collect a debt" and that "[a]ll information obtained will be used for that purpose." Second, the statements had entries for "loan due date," "payment due date," "amount due," "total amount due," "interest-bearing principal," "deferred principal," "outstanding principal," and "interest rate." Third, the statements attached a monthly payment coupon at the bottom of the first page with Select Portfolio's address. The coupon included late fee information and instructed Ms. Daniels to "[p]lease detach bottom portion and return with your payment" and "[m]ake checks payable to Select Portfolio Servicing." Viewed holistically, a communication that expressly states that it is "an attempt to collect a debt," that asks for payment of a certain amount by a certain date, and that provides for a late fee if the payment is not made on time is plausibly "related to debt collection." *Reese*, 678 F.3d at 1217.[3]

---

[3] We do not hold that the statements are, as a matter of law, communications in connection with the collection of a debt. Our ruling is that Ms. Daniels has plausibly alleged that they are.

The context of the communication also matters. By the time Select Portfolio sent Ms. Daniels the November 2016 statement, she had prevailed in the foreclosure action brought by Wells Fargo. During that litigation Select Portfolio was the mortgage servicer. Given that the state court had ruled that the unpaid $60,808.83 would be added to the end of the loan modification agreement, the sums listed as allegedly due and owing in the November 2016 statement, along with the delinquency notice, could be viewed as an attempt to collect (or induce payment on) a disputed and allegedly defaulted debt. *See Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011); *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 386 (7th Cir. 2010).

We recognize that some portions of the statements could have been for informational purposes. But, as we have already held, a communication can have dual purposes. *See Reese*, 678 F.3d at 1217. Moreover, the possibility that some portions of the statements were informational does not doom Ms. Daniels' complaint at the Rule 12(b)(6) stage, where the standard is not certainty (or even probability) but plausibility. *See Iqbal*, 556 U.S. at 579.

At summary judgment, the result may or may not be the same. "[W]hether a communication was sent 'in connection with' an attempt to collect a debt is a question of objective fact, to be proven like any other fact." *Ruth v. Triumph Partnerships*, 577 F.3d 790, 798 (7th Cir. 2009). We do not prejudge the issue, as it is not before us.

## B

We next address the effect, if any, of the TILA.  As we explain, under the circumstances alleged in the complaint the TILA and its regulations do not foreclose Ms. Daniels' claims under the FDCPA and the FCCPA as a matter of law.

As relevant here, the TILA requires mortgage lenders and/or servicers to send their mortgagees a statement once per billing cycle, updating them on a number of items.  These items are the amount of the principal obligation under the mortgage; the current interest rate in effect; the date on which the interest rate may reset or adjust; the amount of any prepayment penalty that may be charged; late payment fees; a telephone number and electronic mail address that can be used to obtain information regarding the mortgage; the names and contact information of credit counseling agencies or programs reasonably available; and such other information as may be required by regulation.  *See* 15 U.S.C. § 1638(f)(1).  The TILA also provides that a standard form for these disclosures may be proscribed by regulation.  *See* § 1638(f)(2).

The TILA's regulations require a monthly mortgage statement to include certain items.  These include the amount due; the payment due date; the amount of any late payment fee and the date on which it will be imposed; the monthly payment amount (including a breakdown of how the payment will be applied to principal, interest, and escrow); the total sum of any fees

charged since the last statement; any payment amount past due; the total of all payments received since the last statement (including a breakdown of how the payments were applied); the total of all payments received since the beginning of the current calendar year (including a breakdown of how the payments were applied); a list of transaction activity since the last statement; partial payment information; a toll-free telephone number and electronic mail address to obtain information about the account; the amount of the outstanding principal balance; the current interest rate in effect; the existence of any prepayment penalty; and delinquency information (including the length of the delinquency, the risk of consequences like foreclosure, and notice as to whether the service has made the first notice required for foreclosure).  *See* 12 C.F.R. § 1026.41(d)(1)-(8).

The TILA's regulations also include three sample standard forms for the required monthly mortgage statements.  *See* 12 C.F.R. Pt. 26, App'x H, Forms H-30(A) ("Sample Form of Periodic Statement"), H-30(B) ("Sample Form of Periodic Statement with Delinquency Box"), & H-30(C) ("Sample Form of Periodic Statement for a Payment-Option Loan").   Each of the three sample forms includes a payment coupon.  But none of the sample forms contain the words "this is an attempt to collect a debt."

"When confronted with two Acts of Congress touching on the same topic, [a court] is not at liberty to pick and choose among congressional enactments and must instead strive give effect to both."  *Epic Systems Corp. v. Lewis*, 138 S.Ct. 1612, 1624

(2018) (internal quotation marks and citations omitted). *See also Jove Engineering, Inc., v. I.R.S.*, 92 F.3d 1539, 1559 (11th Cir. 1996) ("[W]e are mindful of the fundamental principle of statutory construction that, 'when interpreting and construing two or more acts that affect one particular subject matter or area, the court must attempt to reconcile the acts, if possible, so as to produce a symmetrical whole.'") (alterations adopted and citation omitted). So we must try to give meaning to both the FDCPA and the TILA.

Select Portfolio argues that its monthly mortgage statements cannot be actionable under the FDCPA or the FCCPA because they largely conform to the requirements of the TILA and its regulations. It relies primarily on our decision in *Green v. Specialized Loan Servicing LLC*, 766 F. App'x 777 (11th Cir. 2019).

*Green*, as an unpublished opinion, is not binding. But even if it were, it is distinguishable because it does not answer the precise coverage question before us. In *Green* a consumer alleged that a mortgage servicer violated the FDCPA by "attempting to collect mortgage debt beyond the five-year statute of limitations," thereby engaging in "unlawful debt collection of time-barred debts." *Id.* at 779. The *Green* panel held that the servicer's monthly mortgage statement contained no language "beyond what is required by [the] TILA" and therefore did "not rise[ ] to the level of being *unlawful* debt collection language." *Id.* at 784 (emphasis added).

The consumer in *Green* relied on the following delinquency language in an "important messages" box in the mortgage statement: "Please note, if your account is past due, this amount may not include all fees or other amounts necessary to fully reinstate your loan." *Green v. Specialized Loan Servicing LLC*, 280 F.Supp.2d 1349, 1355 (M.D. Fla. 2017). But the mortgage statement did not include the "this is an attempt to collect a debt" language that we have here. *See id.* Because the TILA's regulations require delinquency information, *see* 12 C.F.R. § 1026.41(d)(8), the *Green* panel held that the content of the mortgage statement did not go beyond "the 'garden variety' type of statement required by [the] TILA, even for the 'least sophisticated consumer.'" *Green*, 766 F. App'x at 784–85 (quoting the district court's order). In reaching this conclusion, the *Green* panel accepted *Kelliher v. Target Nat'l Bank*, 826 F.Supp.2d 1324, 1328–29 (M.D. Fla. 2011), as standing for the "unremarkable principle that a monthly statement that is in conformity with [the] TILA may nevertheless include additional language that constitutes debt collection," and cited favorably to *Caceres*, 755 F.3d at 1302, and *Reese*, 678 F.3d at 1217. *See Green*, 766 F. App'x at 785.

In this case, Select Portfolio's mortgage statements contained "this is an attempt to collect a debt" language that is not required by the TILA or its regulations. The FDCPA mandates that consumers be told in the "initial written communication" that a "debt collector is attempting to collect a debt and that any information obtained will be used for that purpose," 15 U.S.C. §

1692e(11), but neither the FDCPA nor the TILA requires the use of such language in subsequent communications or periodic statements. Because *Green* did not involve a mortgage statement with "this is an attempt to collect a debt" language, it is distinguishable. And because it recognized that a TILA-mandated mortgage statement can contain additional language that makes it a debt-collection communication, *Green* is not inconsistent with our ruling today.

Select Portfolio also relies on a number of unpublished cases to support its contention that its mortgage statements were not communications in connection with the collection of a debt. Most of those cases, however, do not bear the weight that Select Portfolio seeks to place on them. For example, in *Hill v. DLJ Mortgage Capital, Inc.*, 689 F. App'x 97, 98 (2d Cir. 2017), the monthly statements were "in compliance with the [TILA]" and did "not reflect attempts to collect on the debt referenced by the [n]ote." The same is true of *Wagoner v. Ever Home Mortgage, Inc.*, 2018 WL 2230553, at *4 (D.N.J. 2018).

There are two unpublished district court cases that do support Select Portfolio's position. *See Jones v. Select Portfolio Servicing, Inc.*, 2018 WL 2316636 (S.D. Fla. 2018); *Zavala v. Select Portfolio Servicing, Inc.*, 2018 WL 6198685 (S.D. Fla. 2018). In both of those cases the district courts ruled that monthly mortgage statements required by the TILA were not communications in connection with the collection of a debt under the FDCPA even though they contained "this is an attempt to collect a debt"

language. The district courts concluded that this additional language constituted only a "minor discrepanc[y]" when compared with the TILA's model forms. *See Jones*, 2018 WL 2316636, at *4; *Zavala*, 2018 WL 6198685, at *2–*3.

Having considered *Jones* and *Zavala*, we respectfully disagree with them. We hold, consistent with our decisions in *Reese* and *Caceres*, that monthly mortgage statements required by the TILA and its regulations can plausibly constitute communications in "connection with the collection of a[ ] debt" under the FDCPA and in connection with "collecting [a] . . . debt" under the FCCPA if (a) they contain "this is an attempt to collect a debt" language, (b) they request or demand payment of a certain amount by a certain date, (c) they provide for a late fee if the payment is not made on time, and (d) the history between the parties suggests that the statement is an attempt to collect on a disputed debt. *See Lear v. Select Portfolio Servicing, Inc.*, 309 F.Supp.3d 1237, 1240 (S.D. Fla. 2018) (the "fact that [the] TILA requires" the servicer "to send [the consumer] periodic [mortgage] statements does not mean that [the consumer's FDCPA] claims fail as a matter of law," and the use of "this is an attempt to collect a debt" language "would seem to indicate that the mortgage statements are debt collection communications").

## C

We have considered the guidance bulletin issued in 2013 by the Consumer Financial Protection Bureau, on which the district

court relied. *See* Consumer Financial Protection Bureau, *Implementation Guidance for Certain Mortgage Servicing Rules*, CFPB Bulletin 2013-2, 2013 WL 9001249 (Oct. 15, 2013). In that bulletin, the CFPB provided an "advisory opinion" concerning the "cease communications" option provided by the FDCPA. *See* 15 U.S.C. § 1692c(c). The CFPB concluded that servicers who are debt collectors are generally not liable under § 1692c(c) to consumers who make a "cease communications" request if they comply with the regulations issued under federal laws like the TILA, including 12 C.F.R. § 1026.41 (the periodic statement regulation). The CFPB explained that it believed a consumer's "cease communications" request under the FDCPA "should ordinarily be understood to exclude the[ ] categories of communications" required by federal law. "Thus, only if the [consumer] sends a communication to the servicer specifically withdrawing the request for [certain action] may a servicer cease to carry out the requirement of these provisions."

The CFPB bulletin addresses a specific issue—servicers who are required by federal law to send consumers certain communications, and the difficulties created when consumers elect the FDCPA's "cease communications" option—and applies the settled principle of statutory interpretation that, when there is an irreconcilable conflict between two statutes, "the specific governs the general." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992). Select Portfolio argues, however, that we should read the CFPB bulletin more broadly as standing for the proposition

that any conduct or communications required by the TILA and its regulations cannot be actionable under the FDCPA. We decline the invitation.

An agency's interpretive bulletin provides non-controlling guidance, and its persuasiveness depends on the thoroughness, consistency, and validity of its reasoning. *See Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1268 n.5 (11th Cir. 2008); *Brennan v. Great Am. Disc. & Credit Co.*, 477 F.2d 292, 297 (5th Cir. 1973). Given that the CFPB bulletin deals only with consumers who choose the "cease communications" option under the FDCPA, we do not think it is wise to extend it beyond that scenario. *See* 15 U.S.C. § 1692k(e) ("No provision of this section imposing any liability shall apply to any act done or omitted in good faith in conformity with any advisory opinion of the [CFPB], notwithstanding that after such act or omission has occurred, such opinion is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.").

Indeed, there is nothing in the bulletin indicating that the CFPB sought to provide an advisory opinion excluding all TILA-required periodic mortgage statements from FDCPA coverage no matter the circumstances. As some courts have noted, a debt collector can satisfy the TILA requirements and at the same time comply with the harassment (§ 1692d), misrepresentation (§ 1692e), and unconscionable practices (§ 1692f) provisions of the FDCPA, which was passed after the TILA. *See, e.g.*, *Kelliher*, 826 F. Supp. 2d at 1329. Unlike the conflict between the FDCPA pro-

hibiting certain communications and the TILA requiring those same communications, a debt collector can satisfy the TILA's information requirements and at the same time comply with the FDCPA provisions at issue here.

## D

In response to our colleague's dissent, we offer the following observations.

First, the dissent says that we should look at the substance of the communication. But that is exactly what we have done—we have considered *all* of the language in the monthly mortgage statements and viewed that language in the context of the prior foreclosure litigation.

Second, the dissent maintains that our unpublished decision in *Green*, 766 F. App'x at 784, warrants a different result here. We respectfully disagree. For starters, *Green* did not involve all of the language present here. And, as explained earlier, *Green* addressed whether a mortgage statement "r[o]se[] to the level of being *unlawful* debt collection language," *id.* (emphasis added)—in other words, it considered the merits of the FDCPA claim. We, in contrast, have only tackled the question of FDCPA and FCCPA coverage—whether Select Portfolio's mortgage statements are plausibly in connection with the collection of a debt under the FDCPA and the FCCPA. That is, we have only answered whether FDCPA and FCCPA coverage is plausible, and we leave for the district court on remand whether Ms. Daniels'

allegations make out a plausible claim that Select Portfolio violated the FDCPA and the FCCPA.

Third, the dissent asserts that use of the words "this is an attempt to collect a debt" in a monthly mortgage statement does not—not even in conjunction with the other debt-collection language in the statement—allow for a plausible claim of FDCPA and FCCPA coverage. That approach, however, would incorrectly render the "this is an attempt to collect a debt" language completely irrelevant, and do so as a matter of law. And though the dissent apparently demands more threatening language, the in connection requirement of the FDCPA and the FCCPA does not require that the communication itself be debt collection—it only requires that the communication be "related to debt collection." *Reese*, 678 F.3d at 1216.

Fourth, the dissent contends that we have created a circuit split. An examination of the cases cited by the dissent, however, negates that claim.

We'll start with the earliest case, the Sixth Circuit's decision in *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389 (6th Cir. 1998). In that case the Sixth Circuit explained that a letter sent to a consumer was not transformed "into an unlawful demand for payment" just because it "stated at the bottom that it 'is an attempt to collect a debt[.]'" *Id.* at 399. But the Sixth Circuit came to that conclusion because, at the time the letter was sent, the 1987 version of the FDCPA "required" such a notice. *See id.* Indeed, the Sixth Circuit recognized in a footnote that the FDCPA

19-10204                Opinion of the Court                25

was amended in 1996 to eliminate this requirement in subsequent communications, and explained that the debt collector was "attempting to comply with the requirements of the Act as it appeared when it sent the letter to [the consumer]." *Id.* at 399 n.9.

Here, of course, nothing in the FDCPA or the FCCPA required Select Portfolio to include "this is an attempt to collect a debt" language in subsequent mortgage statements. *Lewis* therefore does not conflict with our decision today.[4]

The second case, *Gburek,* 614 F.3d at 386, is unremarkable. The Seventh Circuit held there that a letter to a consumer "qualifie[d] as a communication in connection with an attempt to collect a debt." *Id.* at 386. In a footnote, the Seventh Circuit cited the Sixth Circuit's decision in *Lewis* for the proposition that a "disclaimer [in the letter] identifying it as an attempt to collect a debt" did not "*automatically* trigger the protections of the FDCPA, just as the absence of such language does not have dispositive significance." *Id.* at 386 n.3.

*Gburek* did not involve mortgage statements with the language used by Select Portfolio, and is therefore distinguishable on that basis alone. Moreover, in citing to *Lewis,* the Seventh Circuit

_____

[4] We note that *Lewis* was a 2-1 decision, with the dissent in that case making the persuasive point that a letter which says that it is an attempt to collect a debt "is exactly what it says it is: ' . . . an attempt to collect a debt.'" *Lewis,* 135 F.3d at 414 (Ryan, J. dissenting). *See also id.* at 415 ("The letter is not a mere notification of the invocation of remedies ordinarily invoked; it is a debt-collection letter, just as it says[.]").

in *Gburek* did not acknowledge what *Lewis* itself had recognized—that after 1996 the FDCPA does not require "this is an attempt to collect a debt" language to be included in subsequent mortgage statements.  So the *Gburek* discussion was based on a misreading of *Lewis* and a failure to grasp the limitations of that case's holding.  In any event, *Gburek* said only that the "attempt to collect a debt" language does not "automatically" result in the applicability of the FDCPA.  It did not purport to hold that such language is irrelevant to the question of FDCPA coverage.

Next is *Maynard v. Cannon*, 401 F. App'x 389 (10th Cir. 2010), an unpublished decision from the Tenth Circuit.  *Maynard* "assume[d] that non-judicial foreclosures are covered by the FDCPA," and in so doing said that inclusion of the words "sent in an attempt to collect a debt" was "legally irrelevant."  *Id.* at 395.

The pertinent language in *Maynard* is dicta, as the Tenth Circuit assumed that the FDCPA applied to the communication. To the extent that the Tenth Circuit was holding—as a matter of law—that language to the effect that "this is an attempt to collect a debt" is always irrelevant in deciding whether a communication is "in connection with" the collection of a debt under the FDCPA, we are not convinced by such a sweeping proposition.  To borrow from Judge Ryan's dissent in *Lewis*, such language "is what it says it is"—an attempt to collect a debt.  *See Lewis*, 135 F.3d at 414 (Ryan, J., dissenting).  Or, to put the matter as a question, in determining whether a communication is in connection with the collection of a debt, what could be more relevant than a state-

ment in the communication that "this is an attempt to collect a debt"?

Heinz v. Carrington Mortgage Services, LLC, 3 F. 4th 1107 (8th Cir. 2021), is the final case. There the Eighth Circuit held that several letters sent to a consumer were not "in connection with an attempt to collect on the underlying mortgage debt." See id. at 1114. After coming to that conclusion, it addressed the "[m]ore troublesome" inclusion in the letters of the words "[t]his communication is from a debt collector and it is for the purpose of collecting a debt." Id. Relying on the Seventh Circuit's decision in Gburek and the Sixth Circuit's decision in Ellis, the Eight Circuit wrote that such a boilerplate disclosure does not "automatically trigger the protections of the FDCPA, just as the absence of such [disclosures] does not have dispositive significance." Id. (quoting Gburek, 614 F.3d at 386 n.3). Significantly, the Eighth Circuit concluded that because the statement was "at odds with the remainder of the letter," it did "not turn the communication into something that it [was] not— . . . a communication made in connection with the collection of a debt for the purposes of the FDCPA." Id.

Like Gburek, Heinz failed to consider the fact that the FDCPA no longer requires the use of such language in subsequent mortgage statements. It is therefore not persuasive. In any event, Heinz—like Gburek—did not hold that "this is an attempt to collect a debt" language is always irrelevant to the question of FDCPA coverage. Indeed, Heinz acknowledged the obvious: "[I]t

. . . seem[s] implausible that a communication labeled by the sender as 'for the purposes of collecting a debt' would, in fact, not be sent 'in connection with the collection of a debt.'" *Id.* Our thoughts exactly.

V

The only question we address today is the narrow one resolved by the district court—whether a required monthly mortgage statement that generally complies with the TILA and its regulations can plausibly be a communication "in connection with the collection of a[ ] debt" under the FDCPA or in connection with "collecting [a] . . . debt" under the FCCPA if it contains additional debt-collection language. For the reasons we have set out, our answer to that question is yes.

We note, in closing, that Select Portfolio may at times be conflating the threshold issue of a communication's coverage under the FDCPA and the FCCPA with the ultimate merits issue of an entity's liability under those Acts as a result of that communication. Our holding does not mean (or suggest) that monthly mortgage statements required by the TILA and its regulations automatically lead to liability under the substantive provisions of the FDCPA or the FCCPA. In order for Ms. Daniels to prevail on her claims, she will need to show that the statements violated §§ 1692d, 1692e(2)(A), 1692e(10), and 1692f(1) of the FDCPA and/or §§ 559.72(7) and 559.72(9) of the FCCPA. We express no view on whether Ms. Daniels has plausibly pled that any of the mortgage

19-10204            Opinion of the Court               29

statements—given the alleged inaccuracies—violated any of these provisions, and leave that matter for the district court to resolve on remand under the "least sophisticated consumer" standard. *See Holzman v. Malcolm S. Gerald & Assocs., Inc.*, 920 F.3d 1264, 1269 (11th Cir. 2019).

The district court's dismissal of Ms. Daniels' complaint is reversed, and the case is remanded for further proceedings.

REVERSED AND REMANDED.

19-10204                LAGOA, J., Dissenting                1

LAGOA, Circuit Judge, Dissenting:

I respectfully dissent from the majority's opinion, as I do not believe that inclusion of the sentence, "This is an attempt to collect a debt," in the periodic mortgage statements that Select Portfolio Servicing, Inc., sent to Constance Daniels can bear the weight the majority places on it.

The Truth in Lending Act ("TILA"), 15 U.S.C. § 1638, and regulations under the TILA require a residential mortgage servicer to provide periodic—in this case, monthly—statements containing comprehensive information regarding the status of the consumer's loan, ranging from the amount due, the payment due date, and late payment fees, to information regarding delinquency, the consequences of late or nonpayment, and whether the servicer has taken any steps regarding foreclosure. *See* 15 U.S.C. § 1638(f); 12 C.F.R. § 1026.4(d). Regulations under the TILA also expressly authorizes the use of a standard-form payment coupon to be included with the periodic statement.

The mortgage statements at issue are each a couple of pages. The sentence, "[t]his is an attempt to collect a debt," appears once on each statement, is not physically separated from other information in the statement, is not capitalized or otherwise emphasized, and is printed using the same font and font size as the rest of the information contained in the statement. Other than this sentence, the information in Select Portfolio's statements and payment coupons does not materially differ from the TILA's requirements. Indeed, the statements do not contain any other lan-

guage that arguably tries to induce Daniels to pay the outstanding debt or resembles the types of threats or demands for payment that we have previously discussed in connection with the Fair Debt Collection Practices Act ("FDCPA").

To be sure, the majority is correct when it states that "a required monthly mortgage statement that generally complies with the TILA and its regulations can plausibly be a communication 'in connection with the collection of a[ ] debt' under the FDCPA or in connection with 'collecting [a] . . . debt' under the FCCPA if it contains additional debt-collection language." Maj. Op. at 28. But this means that the Court's inquiry should focus on the additional debt-collection language and the substance of the communication sent to the consumer by the servicer. That approach is consistent with our precedent, and it is also consistent with the conclusion of other circuits, which have uniformly rejected the legal significance of the "attempt to collect a debt" language.

"This is an attempt to collect a debt"—the only additional language contained in the TILA mandated statements—are not magic words, and their presence or absence in a communication to a debtor has no independent legal significance. Imagine a mortgage statement that included language typically found in a demand letter but lacked the "attempt to collect a debt" language—or expressly disclaimed that it was an attempt to collect a debt altogether. Would that insulate the servicer from the FDCPA requirements? In my view, the answer is "no." For the same reason, including that sentence in a monthly mortgage

statement that in all other respects simply includes language required by the TILA does not automatically mean that the statement is subject to both the TILA and the FDCPA.

Courts should look at the substance of the communication to determine whether the FDCPA applies, i.e., by determining whether the communication uses language typically seen or used in debt-collection efforts. Because that type of language is not present here, the "attempt to collect a debt" sentence alone cannot be the basis for a reversal. I would affirm the dismissal of Daniels's complaint.

## A. FDCPA, TILA, and the Eleventh Circuit

Under the relevant FDCPA provisions, a debt collector may not (1) "engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," 15 U.S.C. § 1692d, (2) "use any false, deceptive, or misleading representation or means in connection with the collection of any debt," *id.* § 1692e, or (3) "use unfair or unconscionable means to collect or attempt to collect any debt," *id.* § 1692f. Similarly, the relevant Florida Consumer Collections Practices Act ("FCCPA") provisions require the action to be made in connection with "collecting [a] . . . debt." Fla. Stat. § 559.72(7), (9).

In *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012), this Court held that to state a plausible FDCPA claim the plaintiff "must allege, among other

things, (1) that the defendant is a 'debt collector' and (2) that the challenged conduct is related to debt collection."  At issue in *Reese* was "a collection or 'dunning' notice, which consisted of a cover letter and three documents" sent by a law firm.  *Id.* at 1214. The cover letter provided that it was intended to advise the plaintiffs that their "Note has been and is declared to be in default for non-payment and Lender hereby demands full and immediate payment of all amounts due and owing thereunder," that "attorney's fees will be added to the total amount for which collection is sought," and that non-payment will result in foreclosure.  *Id.*  The attached documents also contained various statements in all capital letters stating that the law firm was attempting to collect a debt, as well as statements related to the forced sale of the property and the deadline for disputing the debt.  *Id.* at 1214–15.  This Court found that "[i]n light of all that language" the plaintiffs had sufficiently alleged that the notice was a communication related to the collection of a debt for purposes of the FDCPA.  *Id.* at 1217.

In *Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299, 1300– 01 (11th Cir. 2014), the lender's law firm sent the plaintiff a letter stating that she "was behind in her payments on her residential mortgage and owed the lender" just under $270,000.  The letter stated that the plaintiff could dispute the validity of the debt and that "[t]his communication is for the purpose of collecting a debt, and any information obtained from the debtor will be used for that purpose."  *Id.* at 1301.  The letter also contained references, in two additional paragraphs, to "collection efforts" and stated: (1)

19-10204                    LAGOA, J., Dissenting                    5

those collections efforts would continue, (2) that additional attorney's fees and costs would accrue, (3) the amount of the debt, with indication that it must be paid in certified funds, and (4) the name of the creditor and the phone number of the law firm in the paragraph relating to payments. *Id.* at 1303. This Court found that no reasonable person would consider the letter to be a legal pleading[1] (let alone a formal one) and concluded that it was "a communication in connection with the collection of a debt." *Id.*

Under the TILA, a servicer (with respect to a residential mortgage loan) must send the obligor a statement for each billing cycle containing certain information in a "conspicuous and prominent manner." 15 U.S.C. § 1638(f)(1). The statement must include:

> (A) The amount of the principal obligation under the mortgage.
>
> (B) The current interest rate in effect for the loan.
>
> (C) The date on which the interest rate may next reset or adjust.
>
> (D) The amount of any prepayment fee to be charged, if any.

---

[1] Under 15 U.S.C. § 1692g(d), "a communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of section (a)." Section 1692g(a) addresses the contents required in the initial communication by a debt collector with a consumer in connection with the collection of any debt.

6                    LAGOA, J., Dissenting                    19-10204

(E) A description of any late payment fees.

(F) A telephone number and electronic mail address that may be used by the obligor to obtain information regarding the mortgage.

(G) contact information, as specified by the statute, of counseling agencies or programs reasonably available to the obligor that have been certified or approved and made publicly available by the Secretary of Housing and Urban Development or a state housing finance authority . . . .

(H) Such other information as the [Consumer Financial Protection Bureau ("CFPB")] may prescribe in regulations.

*Id.* Those CFPB regulations require that a periodic statement also include information such as the amount due, the payment due date, the amount of any late payment fee and the date on which it will be imposed, and delinquency information, including: the length of the delinquency; the risk of consequences like foreclosure; and notice as to whether the servicer has made the first notice required for foreclosure. *See* 12 C.F.R. § 1026.41(d)(1)–(8).

Pursuant to § 1638(f)(2), the CFPB has developed and published standard disclosure forms. *See* 12 C.F.R. ch. X, pt. 1026, App'x H, Forms H-30(A), H-30(B), H-30(C). These sample forms contain payment coupons, but they lack the "this is an attempt to collect a debt" language present in Select Portfolio's mortgage statements.

19-10204                Lagoa, J., Dissenting                7

Unlike the case before us here, neither *Reese* nor *Caceres* involved a mortgage statement required to be sent under the TILA.  Although not binding on us as an unpublished decision, this Court has considered whether mortgage statements that generally comply with the TILA's requirements implicate the FDCPA.  In *Green v. Specialized Loan Servicing LLC*, 766 F. App'x 777, 784 (11th Cir. 2019), the plaintiff claimed that a servicer violated the FDCPA by sending a mortgage statement that allegedly "falsely included time-barred payments from more than five years prior."  The mortgage statement in *Green* contained the following language: (1) "You are currently due for the 07/01/10 payment," and (2) "Amount to bring loan current: Please note, if your account is past due, this amount may not include all fees or other amounts necessary to fully reinstate your loan."  *Green v. Specialized Loan Servicing LLC*, 280 F. Supp. 3d 1349, 1355 (M.D. Fla. 2017).  A comparison of the mortgage statement attached as an exhibit to the plaintiff's complaint in *Green* and Select Portfolio's mortgage statement shows that, while not identical, there are no material differences between them.  Both contain the TILA-mandated information regarding the status of the loan, both contain payment coupons, and while the statement in *Green* does not include the "attempt to collect a debt" language, it does state, "SPECIALIZED LOAN SERVICING LLC IS REQUIRED BY FEDERAL LAW TO ADVISE YOU THAT THIS COMMUNICATION IS FROM A DEBT COLLECTOR." Amended Complaint at 19, *Green v. Specialized*

*Loan Servicing LLC*, 280 F. Supp. 3d 1349 (M.D. Fla. 2017) (No. 6:16-cv-1298-Orl-37KRS, ECF No. 21).[2]

This Court concluded that there was "nothing in the language in question from the Mortgage Statement, beyond what is required by TILA, which rises to the level of being unlawful debt collection language." *Green*, 766 F. App'x at 784. While the plaintiff argued that the servicer should have reduced the total amount shown due and not included payments due beyond five years prior, this Court noted that (1) the TILA regulations required the statement to include delinquency information and (2) "under Florida law, a lien remains on a property throughout the term of the mortgage irrespective of any statute of limitations." *Id.* at 784–85 (citing *Countrywide Home Loans, Inc. v. Burnette*, 177 So. 3d 1032, 1034 (Fla. Dist. Ct. App. 2015)). As such, this Court concluded that "the district court did not err in finding that the content of the mortgage statement does not rise above the 'garden variety' type of statement required by TILA, even for the 'least sophisticated consumer.'" *Id.* at 785 (quoting *Green*, 280 F. Supp. 3d at 1355).

Additionally, in *Green*, this Court recognized that "a monthly statement that is in conformity with TILA may nevertheless include *additional language* that constitutes debt collec-

---

[2] The Court "may take judicial notice of [our] own records and the records of inferior courts." *United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987).

19-10204                    LAGOA, J., Dissenting                          9

tion," such as the language discussed in *Kelliher v. Target National Bank*, 826 F. Supp. 2d 1324 (M.D. Fla. 2011). *Id.* (emphasis added). Relevant here, this Court distinguished the statements in *Green* from those in *Kelliher* because the mortgage statement in *Green* "lack[ed] the strong demands for payments used by debt collectors in cases like *Kelliher*." *Id.* The three mortgage statements at issue in *Kelliher* contained increasingly stronger demands for payment: (1) "Please Contact Us About Your Past Due Account . . . We have a number of special payment arrangements, but we need to hear from you in order to try to help," (2) "Account Seriously Past Due . . . but we may still be able to offer special payment arrangements. . . . Your first step is to call us," and then (3) "If we don't set up payment arrangements for your REDcard soon, we'll charge off your account and report it to the credit bureaus as bad debt. There's still time to work with us . . . ." 826 F. Supp. 2d at 1328. The district court in *Kelliher* found that these statements constituted debt collection language under the FDCPA, even if the rest of the mortgage statements complied with the TILA. *Id.* at 1328–29.

The same approach this Court took in *Green*—looking at the substance of the communication sent to the debtor to determine whether it contains language associated with debt collection activity—was also taken in *Saint Vil v. Perimeter Mortg. Funding Corp.*, 630 F. App'x 928 (11th Cir. 2015). The legal issue in *Saint Vil* involved a separate, but related, question under the FDCPA: Was the defendant acting as a "debt collector" for purposes of the

statute?    *Id.* at 930–31.  In *Saint Vil*, the plaintiffs' lender claimed
that plaintiffs were in default on their mortgage, and the lender's
law firm sent them two notices of foreclosure, as required by
Georgia law.  *Id.*  Although neither notice demanded payment of
the underlying debt, the last line of each notice stated that that
the law firm was "acting as a debt collector."  *Id.* at 931.  This
Court concluded, however, that the "acting as a debt collector"
language did not automatically make the law firm a "debt collec-
tor" for FDCPA purposes, explaining that "the question in decid-
ing whether a law firm acted as a debt collector is not simply
what the firm called itself but rather whether the firm *acted* as
debt collector as that term is defined by the statute."  *Id.* (empha-
sis added).  Although the firm's own description of itself was one
factor to consider, "it d[id] not end the inquiry," and had the firm
"taken other action that could be interpreted as trying to induce
payment of the debt," such as "threatening additional penalties or
fees, hounding the Saint Vils for payment, proposing alternatives
to immediate or full payment, or even just telling the Saint Vils
the amount they needed to pay, then the firm might have been
acting as a debt collector under the FDCPA."  *Id.* at 931–32.  None
of those circumstances existed, however, and the plaintiffs relied
solely on the one sentence in the foreclosure notice.  *Id.* at 932.
Rejecting that argument, we concluded that "sending just the
statutorily required notice of foreclosure was not enough."  *Id.*

As the majority recognizes, other than the single sentence
stating, "[t]his is an attempt to collect a debt," nothing else in Se-

19-10204            Lagoa, J., Dissenting            11

lect Portfolio's statements is alleged to be beyond what is required by the TILA. Maj. Op. at 20. Unlike *Kelliher*, there are no increasingly threatening demands for immediate payment in the mortgage statements that Select Portfolio sent to Daniels, *see* 826 F. Supp. 2d at 1328, nor are there statements like those that this Court considered actionable under the FDCPA in *Reese* and *Caceres*, *see* 678 F.3d at 1214–15; 755 F.3d at 1303. And while the "attempt to collect a debt" language is not contained in the sample forms in the TILA regulations, this additional language by itself does not "materially deviate in substance" from the regulation's requirements, which unquestionably seek to inform the debtor of the status of his debt and the consequences of nonpayment. *See Zavala v. Select Portfolio Servicing Inc.*, No. 18-cv-61651-BLOOM/Valle, 2018 WL 6198685, at *2–3 (S.D. Fla. Nov. 28, 2018) (finding that "this is an attempt to collect a debt" language by itself did not automatically convert a monthly statement required by the TILA into debt collection activity under the FDCPA); *Jones v. Select Portfolio Servicing, Inc.*, No. 1:18-cv-20389-UU, 2018 WL 2316636, at *4 (S.D. Fla. May 2, 2018) (same).

Again, *Green* and *Saint Vil*, are not binding on us. And there is a difference of opinion among the district courts in our circuit regarding this issue. But I think that *Green*, *Saint Vil*, and decisions like *Zavala* and *Jones* got it right; the majority's conclusion that, by including this extra language—which is not required but is neither inconsistent with nor materially additive to TILA's

12                    LAGOA, J., Dissenting                    19-10204

requirements—the periodic mortgage statements have become communications subject to the FDCPA is far too broad.

## B.  How This Issue Has Fared in Other Circuits

Each circuit that has considered the issue has concluded that inclusion of "this is an attempt to collect a debt" language, without more, does not convert an otherwise routine communication about a debt into a debt-collection statement subject to the FDCPA.  *See Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 386 n.3 (7th Cir. 2010) (stating that the fact that a communication to a debtor in default on her mortgage "bore a disclaimer identifying it as an attempt to collect a debt, . . . does not automatically trigger the protections of the FDCPA, just as the absence of such language does not have dispositive significance" (citing *Lewis v. ACB Bus. Servs, Inc.*, 135 F.3d 389, 399 (6th Cir. 1990)))[3]; *Maynard v. Cannon*, 401 F. App'x 389, 395 (10th Cir. 2010) (explaining that the inclusion of "attempt to collect a debt" language "does not inevitably lead to the conclusion" that non-judicial foreclosure actions fall within the scope of the FDCPA, as such language, like an explicit statement that a communication is not meant as a debt collection, is "legally irrelevant"); *Boosahda v. Providence Dane LLC*, 462 F. App'x 331, 334–35 (4th Cir. 2012) (rejecting argument

---

[3] In *Lewis*, the Sixth Circuit explained that "the mere fact that the letter states at the bottom that it 'is an attempt to collect a debt' does not transform the letter into an unlawful demand for payment" under a previous version of the FDCPA that required such a statement on all communications. 135 F.3d at 399.

that FDCPA disclaimer language that sender is "attempting to col-
lect a debt" satisfies burden of showing that debt was consumer
debt because such language lacks legal significance); *Goodson v.
Bank of Am., N.A.*, 600 F. App'x 422, 431–32 (6th Cir. 2015) (not-
ing that a statement that the loan servicer "was 'a debt collector
attempting to collect a debt'" in a letter to the mortgagor in de-
fault informing her of a change in loan servicer and also allegedly
falsely representing the amount due "did not, by itself, transform
[an] informational letter into debt collection activity"); *Tabb v.
Ocwen Loan Servicing, LLC*, 798 F. App'x 726, 729 (3d Cir. 2020)
(noting that a disclaimer that sender is not attempting to collect a
debt "does not automatically insulate the communication from
liability under the FDCPA" and that courts must look to the con-
text and content of the communication).

Most recently, in *Heinz v. Carrington Mortgage Services,
LLC*, 3 F.4th 1107, 1112–14 (8th Cir. 2021), the Eighth Circuit
concluded that several communications were not made in con-
nection with the collection of the debt and thus did not fall within
the scope of the FDCPA. At issue in *Heinz* were four communi-
cations that the plaintiff identified as violating the FDCPA be-
cause of misrepresentations they contained. *Id.* at 1109–10. In
determining whether each communication was made in connec-
tion with the collection of a debt, the Eighth Circuit considered
(1) the amount and type of information about the loan in the
communications, (2) whether there was a request or demand for
payment, and (3) the timing of the communications. *Id.* at 1112–

14. Additionally, the Eighth Circuit noted that each communication contained what it characterized as a "so-called 'Mini-Miranda' statement" in the disclosures section. *Id.* at 1114. That statement provided, in relevant part, that "[t]his communication is from a debt collector and it is for the purpose of collecting a debt and any information obtained will be used for that purpose." *Id.* While recognizing that "[a]t first glance, it may seem implausible that a communication labeled by the sender as 'for the purpose of collecting a debt' would, in fact, not be sent 'in connection with the collection of a debt,'" the Eighth Circuit explained that "these types of boilerplate mini-Miranda disclosures . . . 'do[] not automatically trigger the protections of the FDCPA, just as the absence of such [disclosures] does not have dispositive significance.'" *Id.* (alterations in original) (citation omitted) (quoting *Gburek*, 614 F.3d at 386 n.3). Rather, the court concluded that it must "look to the *substance* of the letter—what information it provides and what it asks the borrower to do—to determine whether an 'animating purpose' is 'to induce payment by the debtor.'" *Id.* (emphasis in original) (quoting *McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 914 (8th Cir. 2014)). As the communications did not try to induce the plaintiff to pay the outstanding debt, the court concluded that "a routine disclosure statement that is at odds with the remainder of the letter does not turn the communication into something that it is not—in this case, a communication made in connection with the collection of a debt for the purposes of the FDCPA." *Id.*

19-10204              Lagoa, J., Dissenting              15

### C. Application to This Case

Consistent with our cases, as well as the general approach of the other circuits, this Court should focus on the substance of the language used in the mortgage statements Select Portfolio sent to Daniels to determine whether they are debt-collection communications covered by the FDCPA. Although we are reviewing the district court's Rule 12(b)(6) dismissal of Daniels's complaint for failure to state a plausible claim under the FDCPA and the FCCPA, the issue this appeal requires us to answer is whether, based on her complaint and the content of the attached statements, Daniels has plausibly alleged that those mortgage statements were made "in connection with the collection of a[ ] debt" under the FDCPA or in "collecting [a] . . . debt" under the FCCPA. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). [4]

Daniels claims that the November 2016 statement she received was the most problematic. This statement is titled "Mort-

---

[4] Other courts have similarly ruled on this question at the pleading stage, *see, e.g.*, *McIvor*, 773 F.3d at 914–16, and in ruling on this question have determined that courts may consider the contents of the relevant communications. Here, Daniels attached the relevant communications to her complaint, *see Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls."). It is therefore proper for us to consider the attached exhibits to the complaint at this procedural stage.

gage Statement" and provides: (1) the amount due ($9,075.71) with the loan and payment due dates, (2) an "Explanation of Amount Due" section, (3) a "Past Payments Breakdown" section, (4) a "Transaction Activity" section, (5) information regarding partial payments (and overpayments), (6) Select Portfolio's contact information, and (7) an "Account Information" section, including the interest bearing principal, the deferred principal, the outstanding principal, the interest rate, and the lack of prepayment penalty. The November 2016 statement also contains a "Delinquency Notice" section with delinquency information, which states: (1) "You are late on your mortgage payments. Failure to bring your loan current may result in fees and foreclosure – the loss of your home," (2) the length of delinquency, (3) the amount to pay to make the loan current, (4) that Select Portfolio had completed the first notice/filing to start a foreclosure, and (5) information about mortgage counseling or assistance. All of this information is in line with—indeed, required by—the TILA. The November 2016 statement also contains a "payment coupon," which the TILA's sample forms also contain. *See* 12 C.F.R. ch. X, pt. 1026, App'x H, Forms H-30(A), H-30(B), H-30(C).

Here, the language of the November 16 statement (and the other periodic monthly statements) complies with the TILA's requirement to send mortgagors a statement each billing cycle with all the aforementioned information in order to provide Daniels with information about her mortgage. Because a communication to a debtor can be subject to both the TILA and the FDCPA,

19-10204                LAGOA, J., Dissenting                17

however, we need to determine whether, through the inclusion of the additional sentence—"This is an attempt to collect a debt"—the monthly statements also are communications in connection with the collection of a debt subject to the FDCPA.

Based on the cases discussed above, the inclusion of that language does not automatically turn a periodic, statutorily-mandated TILA communication from a debt collector into a communication that also falls within the scope of the FDCPA. Indeed, the law firms' demand letters in *Reese* and *Caceres* involved materially different language demanding payment and threatening consequences for nonpayment. By contrast, there is no material difference between the inclusion of the "attempt to collect a debt" language in Select Portfolio's mortgage statements and the TILA's requirements that a periodic statement contains information such as the amount due, the due date, and delinquency information, and the TILA's regulations authorizing the use of sample forms providing "payment coupons." Moreover, the information contained in the payment coupons is derived from the information already disclosed in the mortgage statements in compliance with the TILA. There is no new information contained in the payment coupons, not even a demand for payment; the coupons simply provide Daniels with a convenient way to make payment, if she so desires. Nor is there a material difference between Select Portfolio's mortgage statements and the mortgage statement considered in *Green*.

In addition to the "attempt to collect a debt" sentence, the majority also notes that Daniels alleges that she prevailed in an earlier mortgage foreclosure action brought against her by the lender, which resulted in a loan modification agreement. Maj. Op. at 14. Daniels alleges that the sums shown in Select Portfolio's mortgage statements as presently due and owing are incorrect because they do not reflect the terms of the loan modification agreement and liability is therefore triggered under the FDCPA. But Daniels's allegations explaining *why* the information in the mortgage statements is "false, misleading, or deceptive" do not answer the threshold question of whether the FDCPA applies to the statements. *Reese* and *Caceres* require us to look at the language used in the statements themselves, and I remain unconvinced that Daniels's liability allegations can bolster the statements' language for purposes of determining whether the FDCPA applies here.

All TILA-mandated information, by its very nature, constitutes a communication relating to the status of the debt. That includes the TILA-mandated information about making a payment and TILA-authorized payment coupons providing the debtor a way to make a payment if the debtor wants to do so. But that is different from a communication made in connection with seeking to collect on the debt for purposes of the FDCPA. As a result, I cannot conclude that a TILA-mandated mortgage statement that includes a sentence stating that it is "an attempt to collect a debt," without, for example, stronger demands for full or partial pay-

ment and threats of consequences for failure to do so, gives rise to a claim under the FDCPA. Indeed, neither this Court nor other circuits have adopted a test based solely on the presence or absence of certain "magic words;" instead, a court must look at the language used in the mortgage statement to determine whether it materially deviates from what is required by TILA.

Because the language in Select Portfolio's mortgage statements to Daniels does not materially vary from what is required to comply with TILA's mandates for periodic statements sent to a residential mortgagor, and because the statements do not include the type of debt-collection language discussed in *Reese*, *Caceres*, *Green*, and *Saint Vil*, I conclude that Select Portfolio's mortgage statements to Daniels do not "rise above the 'garden variety' type of statement required by TILA." *Green*, 766 F. App'x at 785; *see also, e.g.*, *Hill v. DLJ Morg. Cap., Inc.*, 689 F. App'x 97, 98 (2d Cir. 2017) (affirming dismissal of FDCPA claims premised on TILA-mandated monthly statements and explaining that the mortgage servicer "sent these statements in compliance with the [TILA] . . . , which requires mortgage loan servicers to transmit monthly statements to consumers" and that "[w]ith this in mind, the monthly statements here do not reflect attempts to collect on the debt evidenced by the Note"). And because Daniels's FDCPA claims are predicated solely on the language in these mortgage statements and not on additional communications sent to her by Portfolio Select, I further conclude that Daniels failed to state plausible claims that Select Portfolio violated the FDCPA and that

20                    LAGOA, J., Dissenting                    19-10204

the district court did not err in dismissing her complaint.  Accordingly, I respectfully dissent.