[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-12106

Non-Argument Calendar

_____

SHERMAN ANDERSON MORTON, III,
ASHLYN AIKEN MORTON,

                    Plaintiffs-Counter Defendants-Appellants,

*versus*

LIEN FILERS, ETC. OF HEATH W. WILLIAMS, L.L.C.,

                    Defendant-Counter Claimant-Appellee,

HEATH W. WILLIAMS, L.L.C.,

                    Defendant-Appellee.

————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:20-cv-03211-TWT

————————————

Before JILL PRYOR, NEWSOM, and BRANCH, Circuit Judges.

PER CURIAM:

This case arises under the Fair Debt Collection Practices Act ("FDCPA").  Plaintiffs Sherman Anderson Morton, III and Ashyln Aiken Morton ("Mortons") engaged in a dispute with Tigeski, L.L.C., over a bill Tigeski issued the Mortons for remediation work it performed at the Mortons' residence.  The Mortons, through their attorney Ronald Daniels, mailed Tigeski and its attorney, Heath Williams, from Lien Filers, Etc. of Heath W. Williams, L.L.C. ("Lien Filers"), a proposed settlement for $2,000.  Without including Williams on the response e-mail, a Tigeski employee accepted the offer.  When Williams found out about the settlement, he expressed his strong disapproval of Daniels resolving a settlement with Williams's client without Williams's approval.  Daniels then stated that he assumed Tigeski was no longer interested in the deal.  Williams responded that Tigeski would take the deal but requested an additional $450 in attorneys' fees.  The Mortons filed a motion to enforce the original $2,000 settlement, and Tigeski agreed to settle for $2,000.

After the parties settled, the Mortons brought this federal suit, alleging that Williams' request for $450 in attorneys' fees violated the FDCPA.  The district court adopted a magistrate judge's report and recommendation granting summary judgment to Williams.  Because we find that Williams's e-mail was a counteroffer in an ongoing settlement negotiation, rather than an attempt to collect a debt, we hold that the e-mail falls outside the FDCPA.  Accordingly, we affirm.

## I.    Background

In July 2019, the Mortons entered into a work authorization contract with Tigeski for Tigeski to perform water remediation work at the Mortons' residence.  The Mortons disputed the final bill.  On August 28, 2019, Tigeski filed a "Materialman's and Mechanic's Claim of Lien."  On October 4, 2019, the Mortons filed and recorded a notice that they were contesting the lien.  Tigeski then engaged the law firm, Lien Filers, to perfect its lien by initiating a lien action.  On November 12, 2019, Williams, an attorney for Lien Filers, initiated the lien action by filing a claim in the Magistrate Court of Dekalb County.

On December 11, 2019, Daniels, the Mortons' lawyer, mailed a letter to both Williams and Tigeski proposing to settle "all of these interrelated claims" for $2,000.  Daniels represented that if the offer was not accepted "by close of business on December 20, 2019," the Mortons would "be filing responsive pleadings including a counterclaim against [Tigeski] and seeking to have the case transferred to State Court."

On December 19, 2019, without including Williams, a Tigeski employee named Sue Jefcoat initiated a series of e-mails with Daniels and "communicated acceptance" of the settlement to Daniels. The day after, Jefcoat reached out to Daniels to confirm that he had received her "acceptance." Daniels acknowledged that he had received the acceptance. On December 23, 2019, Jefcoat asked Daniels for an update on "the status of payment and settlement agreement."

On December 26, 2019, Daniels replied asking for Tigeski's attorney's e-mail information, noting that the rules of professional conduct required him to communicate with the company's lawyer because the company was represented by counsel. Jefcoat responded with Williams's e-mail address and phone number, this time copying Williams on the e-mail. On December 27, 2019, Williams responded, acknowledging receipt of Daniels' and Jeffcoats' e-mail, and stating that Daniels could either e-mail Williams or call him.

On December 30, 2019, Daniels e-mailed Williams a "proposed release." A contentious exchange followed. Williams responded, "Can you tell me why you negotiated a resolution with my client that has been represented by counsel since the outset?" Daniels then explained the nature of his e-mail communications with Jefcoat. But Williams responded that he "really [didn't] care what [his] client did" and that Daniels "knew [Tigeski] w[as] represented by counsel" yet still communicated with a Tigeski

employee without involving counsel. Williams demanded to know how long Daniels had been practicing law.

Based on the previous exchange, Daniels responded that he assumed Tigeski was "no longer interested in resolving this matter," so he would "proceed accordingly." Williams responded that Daniels was "intentionally avoiding the point" that Daniels "had absolutely no right to discuss anything with [Williams's] client knowing they were represented and in doing so ha[d] violated several ethics guidelines." Williams concluded the e-mail by again asking Daniels how long he had been practicing law, emphasizing that he "want[ed] an answer." Daniels responded that he had been practicing since 2012, to which Williams responded, "Then [you] should know better."

Daniels then asked Williams to "[p]lease confirm whether your client still intends to accept the terms sent to your office on December 11, 2019 by 5:00 P.M. today[;] [o]therwise we will proceed as advised in the letter." Williams responded telling Daniels to "[g]o fuck [him]self," that Daniels was "[at] minimum . . . looking at a reprimand from the state bar if this [wa]s reported," and that he would not "put up with [Daniels] placing any kind of arbitrary and short timeline" on the matter.

The next day, December 31, 2019, Williams e-mailed Daniels, stating that Tigeski had told him they would "accept the $2,000 and split their attorneys fees to date of $900.00," meaning "this [matter] would resolve for $2,450.00." Daniels relayed this information to the Mortons. The same day, Daniels, on behalf of

the Mortons, filed responsive pleadings in the lien action, and a motion to enforce the settlement agreement, or alternatively, to transfer the case to DeKalb County State Court.

On January 3, 2020, Williams e-mailed Daniels that, although the Mortons' motion to enforce the settlement agreement had "zero" chance of being granted, Tigeski wished to go through with the original $2,000 deal. Daniels responded that he would forward the check to Williams as soon as it was received. Following payment, the parties filed a mutual dismissal of the lien action with prejudice.

After the state action was dismissed, the Mortons, now represented by different counsel, brought the instant suit against Lien Filers and Williams in federal court. The Mortons alleged that Williams's e-mails with Daniels violated several provisions of the FDCPA. Specifically, focusing on the e-mails from December 30 and 31, 2019, the Mortons alleged that defendants, who were debt collectors within the meaning of the FDCPA, (1) violated 15 U.S.C. § 1692d by telling Daniels to "go fuck" himself, (2) violated § 1692e(2)(A) and § 1692f(1) by "seeking to collect amounts" they "were not authorized to collect," (3) violated § 1692e(11) by "not disclosing in the initial communication" that "the communication was from a debt collector and was an attempt to collect a debt," and (4) violated § 1692g by not providing the required notices in its communications.

After a contentious discovery period, defendants moved for summary judgment. Following oral argument on the motion, the

magistrate judge issued a report and recommendation ("R&R"), recommending that the defendants' motion be granted. The magistrate judge divided his analysis of the communications into two parts: (1) the December 30, 2019 e-mail chain, ending with Williams telling Daniels to "go fuck" himself, and (2) the December 31, 2019, e-mail where Williams told Daniels that Tigeski would settle the case for $2,000 plus an additional $450 in attorneys' fees.

As to the December 30, 2019, e-mail chain, the magistrate judge ruled that the communications were not made in connection with the collection of any debt, noting that the e-mails did not allege the Mortons owed a debt, demand payment, or threaten future collection proceedings. Instead, the magistrate judge held that the December 30, 2019, e-mails related to "Williams's opinion" that Daniels had violated the rules of professional conduct "by communicating directly with [an entity] whom" Daniels knew was represented by counsel.

As to the December 31, 2019, e-mail from Williams stating that Tigeski would settle for $2,000 plus an additional $450 in attorneys' fees, the magistrate judge held that this e-mail was also not debt collection activity. While the magistrate judge acknowledged that this was a "closer call" because it was a request for payment of money, it held that "no reasonable jury could conclude" that the e-mail "qualified as debt collection activity" because it "lack[ed] virtually all the hallmarks of a debt collection communication." Rather, according to the magistrate judge, Williams's e-mail was prompted by Daniels's request that Williams

"confirm whether [Tigeski] still intend[ed] to accept the terms sent to [his] office on December 11, 2019 by 5:00 P.M. today." Daniels's request, the magistrate judge reasoned, "created an air of ambiguity about whether settlement had been reached in the parties' minds." Thus, the magistrate judge reasoned that Williams's response was a counteroffer, not an affirmative demand for payment.

The district court adopted the R&R over plaintiffs' objections, holding that "the only reasonable way to interpret Mr. Williams's [December 31] e-mail is as an effort to continue negotiating the amount of a settlement payment to resolve the DeKalb Action, and not toward the collection of a debt."

The Mortons appealed.

## II. Standard of Review

We review a district court's grant of summary judgment *de novo*. *Owens v. Governor's Off. of Student Achievement*, 52 F.4th 1327, 1333 (11th Cir. 2022), *cert. denied* 143 S. Ct. 2465 (2023). Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quotations omitted). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc)

(quotations omitted). All submitted evidence is viewed in the light most favorable to the non-moving party. *Owens*, 52 F.4th at 1333.

## III. Discussion

The Mortons raise two issues on appeal. First, they argue that a jury could find that Williams's December 31, 2019, e-mail stating that Tigeski would settle for $2,450 was a demand for more money post-settlement in violation of the FDCPA.[1] Second, they argue that the district court erred by granting summary judgment on grounds that were not raised by the parties: the unenforceability of the settlement agreement that Jefcoat accepted on December 19, 2019.

### A. FDCPA Challenge

As relevant to the Mortons' challenge on appeal, the FDCPA prohibits a "debt collector" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including a false representation of "the character, amount, or legal status of any debt[.]" 15 U.S.C. § 1692e(2)(A). The FDCPA also prohibits a "debt collector" from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Such prohibited conduct includes collecting "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless

---

[1] The Mortons do not challenge the district court's ruling as to the December 30, 2019, e-mail exchange that ended with Williams telling Daniels to "go fuck" himself.

such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). [2]

Thus, the FDCPA requires a plaintiff to show (1) that the defendant is a debt collector, (2) that the challenged conduct related to debt collection, and (3) that the challenged conduct was prohibited under the statute. *See Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012). Defendants concede that they qualify as a debt collector for purposes of the first element.

As to the second element, we have held that "[a] communication has the necessary nexus to debt collection under the FDCPA if it conveys information about a debt and its aim is at least in part to induce the debtor to pay." *Lamirand v. Fay Servicing, LLC*, 38 F.4th 976, 979 (11th Cir. 2022). We make this determination by viewing the communication "holistically." *Id.*

Several aspects of a communication suggest that it is connected to debt collection. For example, (1) explicit language that a lender is "attempting to collect a debt," (2) demands for "full and immediate payment of all amounts due," (3) threats that fees

---

[2] Along with violations of 15 U.S.C. § 1692e(2)(A) and § 1692f(1), the Mortons' complaint also alleged violations of § 1692a(2), § 1692d, § 1692e(11), and § 1692g. But the Mortons make no arguments related to these alleged other violations on appeal, so those claims are abandoned. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

will be added or legal action will be commenced if all amounts on the debt are not paid, (4) instructions on how the debt must be paid, or (5) filing a lawsuit to collect the debt. *See Reese*, 678 F.3d at 1217 (debt collection activity found where lender sent letter that demanded "full and immediate payment of all amounts due," threatened that attorney's fees would be added unless payment was made, and was enclosed with other documents that stated that the lender was "attempting to collect a debt" (emphasis omitted)); *Caceres v. McCalla Raymer, LLC*, 755 F.3d 1299, 1303 (11th Cir. 2014) (debt collection activity found where lender sent letter that stated it was "for the purpose of collecting a debt," referred throughout to "collection efforts," stated the debt amount and how to pay it, and stated that additional attorneys' fees would accrue as collection efforts continued); *Leblanc v. Unifund CCR Partners*, 601 F.3d 1185, 1188, 1193 (11th Cir. 2010) (debt collection activity found where lender sent letter stating legal action might ensue if debt was not resolved within 35 days, and lender subsequently filed lawsuit); *Daniels v. Select Portfolio Servicing, Inc.*, 34 F.4th 1260, 1268 (11th Cir. 2022) (debt collection activity plausibly stated where lender sent mortgage statement noting it was "an attempt to collect a debt," asked for payment of a certain amount by a certain date, and provided for a late fee).

The Mortons' FDCPA challenge fails because Williams's December 31, 2019, e-mail was not debt collection activity. The e-mail—stating that Tigeski would accept the proposed settlement of $2,000 but was requesting $450 additional dollars for attorneys' fees—contained none of the recognized hallmarks of debt

collection activity. The e-mail was not a letter stating that it was "attempting to collect a debt" or demanding "full and immediate payment." *See Reese*, 678 F.3d at 1217. Nor did the e-mail threaten legal action or additional fees if the Mortons did not pay within a certain time. *See Lamirand*, 38 F.4th at 980; *Leblanc*, 601 F.3d at 1188, 1193.

Instead, given the context of the e-mail, we agree with the district court that the e-mail was a counteroffer in what was reasonably perceived to be an ongoing settlement negotiation. While the parties do not dispute that Jefcoat's December 19, 2019, e-mail was an acceptance of the $2,000 settlement, the subsequent e-mails created ambiguity as to the finality of that agreement. To recap, because Tigeski's counsel, Williams, was not copied on the e-mail when Jefcoat accepted Daniels's offer, Williams told Daniels that Daniels "had absolutely no right" to do what he did and that a motion to enforce that settlement had "zero" chance of being granted. And after Williams expressed his strong disapproval of Daniels's actions, Daniels stated that he assumed Tigeski was "no longer interested in resolving this matter," and asked Williams to "confirm whether" Tigeski "still intend[ed] to accept" the $2,000 settlement offer.

These communications suggest that negotiations were still ongoing. Given this backdrop, Williams's December 31, 2019, e-mail—accepting the proposed settlement agreement of $2,000, but requesting $450 additional dollars for attorneys' fees—was a counteroffer in a continuing negotiation, rather than a demand for

collection of a debt. *See Daniels*, 34 F.4th at 1271 (suggesting that "the history of the parties" reflects whether communication was a debt collection attempt).  Thus, this e-mail was not debt collection activity and so falls outside the scope of the FDCPA.[3]

> *B. Whether the district court violated Federal Rule of Civil Procedure 56(f)(2)*

The Mortons also argue that the district court violated Federal Rule of Civil Procedure 56(f)(2) when it "ma[d]e the enforceability of the underlying settlement agreement an issue" in its ruling.  They argue that neither party made arguments about the enforceability of the settlement agreement, nor did the district court give the parties notice and a reasonable time to respond that it was planning to rule on the enforceability of the underlying settlement agreement.  Fed. R. Civ. P. 56(f)(2) (providing that a court may grant a motion for summary judgment "on grounds not raised by a party" after "giving notice and a reasonable time to respond").

The Mortons' challenge fails because the district court did not rule on the enforceability of the settlement agreement. Recall that the magistrate judge found that "Daniels's request that Mr. Williams confirm the settlement amount created an air of

---

[3] Because a communication must be debt collection activity to fall within the FDCPA, our holding that Williams's e-mail was not debt collection activity resolves the case.  Thus, we need not address the third prong: whether the debt collection activity involved conduct that was prohibited by § 1692e(2)(A) and § 1692f.

ambiguity about whether settlement had been reached in the parties' minds." It then clarified that "[w]hether the Mortons could move to enforce the terms of the $2,000 settlement is a separate question from whether the parties believed they were still negotiating, and whether those negotiations could have resulted in a modification of the settlement terms without offense to the FDCPA." Thus, rather than ruling on the enforceability of the alleged settlement agreement, the magistrate judge, in determining whether the exchange constituted debt collection activity, merely considered the context of the e-mail exchange and concluded that Williams's e-mail was intended to be a counteroffer and not a demand for payment of a debt.[4]

Regardless, even accepting the Mortons' argument that the district court's ruling effectively passed on the enforceability of the settlement, there still was no Rule 56(f) violation. First, the parties put the e-mail exchange related to the settlement directly at issue in this appeal by asserting that the e-mails violated the FDCPA. Second, the parties argued in their respective summary judgment motions that an enforceable settlement agreement existed. Third, the magistrate judge held oral argument and, according to Tigeski's brief on appeal, questioned the parties about the existence

---

[4] Nor did the district court, in adopting the magistrate judge's report and recommendation, make a ruling as to the enforceability of the settlement agreement. It similarly stated that "the only reasonable way to interpret Mr. Williams's e-mail is as an effort to continue negotiating the amount of a settlement payment to resolve the DeKalb Action, and not toward the collection of a debt."

of the settlement agreement and advised the parties that the existence of a settlement agreement was a question of law for the court to decide.[5]  In other words, the parties had adequate notice and opportunity to be heard on the existence and enforceability of the settlement agreement.  Accordingly, the Mortons are not entitled to relief on this issue either.

**AFFIRMED.**

---

[5] Although we do not have a transcript of the oral argument, the Mortons do not dispute Tigeski's contention.